## PERRODIN v. THIBODEAUX et al.
### No. 1986.

Court of Appeal of Louisiana.  First Circuit.
Oct. 4, 1939.

W. C. Perrault, of Opelousas, for appellant.

Griffin T. Hawkins and M. C. Pickrel, both of Lake Charles, for appellee.

OTT, Judge.

Clarence Perrodin was killed when struck by a truck driven by the defendant, Russell Thibodeaux, on June 16, 1933, at about eight o'clock P. M. in the Village of Branch, Acadia Parish. The widow of the deceased brought this suit against the driver of the truck and the Maryland Casualty Company, the liability insurance carrier on the truck, for the total sum of $25,-000 for herself and in behalf of the three minor children of the deceased. The case was tried in September, 1935, but because of the fact that the testimony was not filed until some three years later, the judgment was not rendered until December, 1938. The trial court rendered judgment in favor of the plaintiff and against both defendants for $8,000, with legal interest thereon from judicial demand, one half for the widow and one half for the minor children. The insurance company alone has appealed.

The truck which Thibodeaux was driving belonged to the Parish of St. Landry and was used by the Police Jury of that parish in building and maintaining roads. Russell Thibodeaux was 21 years of age on the day of the accident. His father, Thomas Thibodeaux, was the road foreman for the Police Jury in the Sixth Ward of St. Landry Parish, and in his capacity as road foreman kept this truck, together with other road machinery, at his home when not in use. Young Thibodeaux resided with his father and was employed in driving the truck when the truck was used for road purposes. On the day of the accident, young Thibodeaux, with the permission and consent of his father, drove the truck to a fish-fry at Krotz Springs and took along with him in the truck two or three neighbors. Thomas Thibodeaux, the father, also attended the outing, going in his own car and taking some friends with him.

Young Thibodeaux left the picnic with his friends in the early afternoon, and after taking his friends to their homes near Lawtell, instead of going to his own home and returning the truck, he continued on to Church Point and there engaged in a card game with several persons. While at Church Point, he endeavored to get some of his young friends to go with him in the truck to Rayne to see some girls. Failing to get anyone to accompany him, he started on the trip to Rayne alone, whether for the purpose of seeing some girls or procuring some oil for use in the truck and road machines, is a disputed question in the case. The accident occurred while he was driving the truck on his way to Rayne.

The deceased, Perrodin, was standing about 2 feet from the western edge of the black-top beside a parked car just off the west side of the road, and in front of a store in the unincorporated village of Branch. The parked car was facing south and the deceased was standing just east of the parked car talking to several men who were standing beside the car, some of them leaning against it. The paved part of the highway at this point is a little less than 18 feet wide, with a shoulder on the east 6 to 8 feet wide, making the distance from the parked car on the west side to the ditch on the east side, some 24 to 26 feet, and the distance from where the deceased was standing to the east side of the road some 22 to 24 feet.

Thibodeaux was driving the truck from the north at a fast rate of speed. A Ford car driven by a Mr. Hayes came into the highway in front of the truck almost a block north of the parked car. This Ford car came into the highway from a side street on the west, and after entering the highway, proceeded south ahead of the truck about in the middle of the road. As the Ford approached the place where the deceased and the other men were standing by the parked car on the west side of the road, the driver of the Ford pulled his car to the left so as to give ample space in passing the men standing beside the parked car. The Ford was going at a slow rate of speed, and after it had passed the deceased several feet and while the Ford was being driven near the center, or to the left of the center of the road, the truck, approaching from the rear at an excessive rate of speed, endeavored to pass the Ford on the right, and in doing so, knocked the deceased some 15 or 20 feet in front of the parked car beside which he was standing, side-swiped the Ford on its rear right fender, and zig-zagged for more than 100 feet down the road, and then turned over, with its front turned back towards the north. The deceased died a short time after he was struck.

The negligence of Thibodeaux is practically conceded, and if it were not admitted, his negligence is so apparent that it requires no comment. There are only two questions presented on the appeal: (1) Was the deceased guilty of contributory negligence in standing on the paved portion of the highway beside the parked car, and in his failure to get out of the way of the fast approaching truck; (2) if there is liability on the part of Thibodeaux, is the insurance company liable under the "omnibus" clause of the policy?

■ As to the question of contributory negligence on the part of the deceased, the truck had ample room to pass on the left or east of the parked car and the men standing beside it. There was nothing to prevent Thibodeaux from seeing the parked car beside the road and the men near it. The mere fact that a person is standing on the edge of the road when struck by a car, does not necessarily show contributory negligence on his part as a matter of law, where there is ample room for the motorist to pass, as the pedestrian has a right to assume that the motorist will not, without warning, run over him. Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 2, page 456, § 1395; Martin v. Zatarain, 7 La.App. 629.

■ Thibodeaux not only did not give any warning, but admits that he did not see the deceased standing beside the car and did not know that he had struck him until his truck had come to a stop. It is argued that as the evidence shows that the truck was coming at a fast rate of speed and making a great deal of noise, and as one of the men standing by the car moved to the side of the road, the deceased should also have heard and seen the approaching truck and moved to a place of safety. But the other men standing by the car did not deem the situation sufficiently dangerous for them to move from their position beside the parked car. We think the proximate cause of the accident was not the fact that the deceased was standing by the car on the edge of the road, but the proximate cause of the accident was the reckless speed of the truck, and the failure of Thibodeaux to keep a proper lookout and his failure to keep the truck under proper control.

The most serious question in the case is whether or not the insurance company is liable under the "omnibus" or "permission" clause of the policy. The assured under the policy is declared to be the Police Jury of St. Landry Parish. The declared use of the truck as given in a typewritten statement describing the vehicles insured was for constructing and maintaining roads and any work or operations carried on by the Police Jury of St. Landry Parish. This typewritten statement is on-

a separate sheet attached to the printed policy.

On the second page of the printed policy under the heading "Insuring Agreements" there are two clauses or paragraphs which undertake to set forth the liability of the insurer for personal injuries. The first insuring agreement is in Clause A under a marginal heading reading as follows: "Legal Liability for Bodily Injuries or Death." In this clause the company insures against loss from liability imposed by law upon the assured (Police Jury of St. Landry Parish) for damages on account of bodily injuries, including death resulting therefrom, suffered by any person or persons, caused by or through the ownership, maintenance or operation of said truck and used for the purpose named in the statements.

If this were the only insuring agreement in the policy, the liability thereunder for personal injuries would be only when the assured, Police Jury, incurred liability to a person for injuries caused by the truck while it was being used for work or operations connected with the Police Jury. As the Police Jury cannot be held in damages on account of the negligence of its employees while engaged in carrying out the functions of the Police Jury, it follows that, insofar as the Police Jury is concerned, there would be no occasion for this public body to take out such a policy. While such a policy would be of no service to the Police Jury, it would protect third persons injured by the negligence of an employee while performing his duties for the Police Jury, under recent decisions of our courts. See Rome v. London & Lancashire Ind. Co., La.App., 169 So. 132.

But Part II of the printed policy further extends the insurance so as to make it available, in the same manner and under the same conditions as it is available to the assured, to any person operating the truck, *provided the use and operation thereof are with the permission of the named assured*. It is clear that the clause, "in the same manner and under the same conditions as it is available to the named assured," is meaningless and might as well have been left out of this particular policy as there is no "manner" nor are there any "conditions" under which the assured, the Police Jury, could have occasion to avail itself of the insurance. Stripped of this meaningless clause, this part of the printed insuring agreement, insofar as it applies to this truck, means that the insurance will be available to any person *operating* the truck, subject to the one condition only, that the operation of the truck must be with the permission of the named assured.

It is not denied that Thomas Thibodeaux, who had legal possession of the truck and represented the Police Jury relative to its use and safekeeping gave permission to his son, Russell, to use the truck to attend the fish-fry on the day of the accident. Young Thibodeaux did not return the truck to the place where it was kept at his father's home when not in use, but extended the use of the truck on the afternoon and evening of the same day to go to Church Point and was on his way to Rayne when the accident occurred.

There is considerable testimony in the record, pro and con, on the question of whether or not at the time of the accident Russell Thibodeaux was going to Rayne to get some oil for use in the road trucks and machines, or whether he was going to Rayne to see some girls. The testimony on this point is very conflicting, and we do not know what finding of fact the learned trial judge made on this controverted point. However, as we have reached the conclusion that the insurance company is liable if young Thibodeaux was driving the truck with the permission of the assured whether he was on a mission for the Police Jury or for his own pleasure, we deem it unnecessary to decide this disputed point.

Some courts hold that the permission to operate the car under clauses of this kind means that the permission must extend to the particular operation at the time and place of the accident, while other courts, taking a more liberal view, hold that, if permission is given to use the car for a particular trip or purpose, and the person using the car deviates from that specific trip or purpose and extends the use of the car for a trip or purpose of his own, the insurer is liable under such a clause, even though the accident occurred during the extended mission. The rule of liberal construction prevails in this State. Parks v. Hall et al., 189 La. 849, 181 So. 191; Haeuser v. Aetna Casualty & Surety Co. et al., La.App., 187 So. 684.

As there is no question but that Russell Thibodeaux had the permission of his father to whom the care and custody

of the truck was entrusted to use the truck in going to and from the fish-fry, the fact that young Thibodeaux extended his pleasure trip to Rayne would not, under the holdings in the above two cases, make his use of the truck at the time of the accident without the permission of the assured.

If these were the only clauses in the policy referring to the liability of the insurer, there would be little difficulty in reaching the conclusion that the insurance company is liable under the state of facts we have set out above. But under paragraph V of the printed part of the policy several forms of liability are excluded, among them being "while the said automobile or automobiles are being used for purposes other than those specified in the statements." As the purpose for which the truck was to be used is declared in the statements to be constructing and maintaining roads, and other work and operations of the Police Jury, it is contended that there can be no liability under this clause unless at the time of the accident the truck was being used for these purposes.

We have given considerable study to these various clauses in the policy in an effort to reconcile what appears to us conflict, or at least uncertainty in their meaning when construed together. We have assumed that the insurance company which wrote the policy intended for every clause placed therein by it to have some meaning and effect. In the omnibus clause, the company undertakes to make the insurance available to any person operating the truck, placing one condition on that liability; that the truck must be operated with the permission of the assured.

Then in a subsequent clause, the company restricts its liability for injuries caused by the truck only when it is being used for the purpose set forth in the statements; i. e., while the truck is being used for work of the Police Jury of the Parish of St. Landry. Now it is obvious that while the truck is being used for the work of the Police Jury in constructing and maintaining roads for that public body, it is necessarily being used with the consent and permission of that body. It would seem anomalous—if not absurd—to put a clause in the policy that the insurance would be available to any person operating the truck with the permission of the Police Jury if it was intended to restrict that liability to operations in connection with the work of the Police Jury, as it could not be said that such use of the truck was for police jury work unless the permission of that body was given or implied. It seems to us to follow as an irresistible conclusion that the permission clause was put in the policy for a purpose, and the only purpose that we can see for placing such a clause in the policy was to extend the coverage to anyone who was operating the truck with the permission of the assured, irrespective of the particular use for which permission was required. Zuvich v. Ballay et al., La. App., 149 So. 281.

Unquestionably an insurer has the right to restrict its liability for personal injuries caused by the operation of the insured automobile to cover injuries inflicted while the automobile is being used for specified purposes and is being driven by certain persons, so long as these restrictive clauses are not contrary to public policy or good morals. Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 6, page 347, § 3971; Phillips v. New Amsterdam Casualty Co. et al., La.Sup., 190 So. 565. However, as stated by the Supreme Court in the case of Parks v. Hall et al., supra, an automobile public liability policy, like all other insurance contracts, must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate and matters naturally or usually incident thereto, and the language used must be construed so as to effectuate the insurance and not defeat it. And where the language used by the insurer is ambiguous and subject to two or more constructions, that construction most favorable to the insured will be adopted so as to make the insurance effective. Applying these rules to the present case, we conclude that the insurance carrier is liable with Thibodeaux.

There seems to be no complaint as to the amount of the award, and it appears to us to be reasonable and justified. Complaint is made, however, to what appears an injustice to the defendant in being required to pay legal interest on the amount for more than three years during which time the suit lay in abeyance on account of the failure of the plaintiff to file the transcript of evidence. But we are unable to grant any relief on this score if we were disposed to do so, as the law fixes the rate of interest and the date from which it is to run. We might observe, however, in this connection that the de-

fendant, after some three years from the date of the trial, forced the filing of the evidence by a rule on the plaintiff. There was nothing to prevent this defendant from getting the same result much earlier had it desired an earlier decision of the case.

For the reasons assigned, the judgment appealed from is affirmed.