The lower Court in a well prepared opinion has set forth the issues involved in this case and correctly found the facts. It is as follows:
"In this case Gordon Clemons and Vernon Clemons, children of Mrs. Annie Clemons, deceased, have instituted suit against these defendants seeking damages in the sum of $8809.31 for the death of the said Mrs. Annie Clemons, who was killed when a truck owned by C.C. Dey and driven by a negro, named Leo Berryman, struck her on October 25, 1941 in the City of Natchitoches, Louisiana. They allege negligence on the part of Berryman as being the sole and proximate cause of the accident; that the relationship of master and servant existed at the time between Dey and Berryman, and further allege that the accident and the damage resulting therefrom was covered by an insurance policy issued to Mr. Dey by the Metropolitan Casualty Insurance Company.
"In order for plaintiff to recover, it is necessary that he prove the negligence of Berryman and that at the time of the accident, he was either an employee of Mr. Dey, acting within the scope of his employment, or that Berryman was an additional insured under the terms of the insurance policy. Of course, if the relationship of master and servant was not proved, Mr. Dey would necessarily be relieved of any liability.
"This Court thinks the negligence of Berryman was unquestionably proved. He saw, or should have seen, these elderly ladies crossing the road or street under the underpass in ample time to avoid striking any of them; his failure to stop or slow down sufficiently to allow these people to clear the street was negligence pure and simple, and since these ladies entered the street at a time the truck was a considerable distance back, Mrs. Annie Clemons, the decedent, had a right to assume that the driver of the truck would slow down sufficiently to permit her to cross, and accordingly, she was in nowise negligent.
"Negligence of the driver, Berryman, having been established, I will now pass to the next problem of determining whether the relationship of master and servant, so as to make Mr. Dey liable, existed at the time of the accident. On pages 48 and 49 of the transcript will be found the circumstances under which Leo Berryman was driving this truck. Arthur Lacaze, who was in charge of Mr. Dey's farm and also his truck, had promised to take Leo Berryman and his nephew to town, if Berryman would assist him in work on the farm that afternoon. This promise was kept and Leo Berryman and his nephew were taken to town. It was only after the fulfillment of the promise that Berryman requested permission of Lacaze to drive his nephew home, that the accident happened.
"By no stretch of the imagination, could it be held that Berryman at that time was an employee of Mr. Dey, nor that he was on any mission for Dey, nor even that his mission was a part of the remuneration promised Berryman when Lacaze promised to take him and his nephew to town. Therefore, there is no liability on the part of Mr. Dey, and accordingly, the suit as to him is dismissed.
"Therefore, we now come to the question of whether or not Leo Berryman was an additional insured. The policy was issued to Mr. C.C. Dey and he was the only named insured. This policy had what is known as the Omnibus Clause, which reads as follows:
"`Definition of "Insured". Except where specifically stated to the contrary, the unqualified word "Insured" wherever used in coverages H. and I. (property damage and bodily injury) and in other parts of this policy, when applicable to such coverages, includes not only the named insured, but also any person while using the automobile * * * provided the declared and actual use of the automobile is "pleasure and business" or "commercial", each as defined herein, and provided further the actual use is with the permission of the named insured. * * *'
"In order to determine this question, it perhaps would be better to show the relationship of Lacaze, the man who gave permission to Berryman, to Mr. Dey and the truck. The truck was kept constantly on the farm for its use, and Lacaze had complete control over the truck and was *Page 230 
permitted wide discretion in its use, except that Mr. Dey had given his written instructions that no one was to drive the truck except Lacaze, unless an emergency arose, in which event Lacaze's wife must accompany the truck on such a trip. There is no doubt that the trip that Berryman took in the truck was in violation of these written instructions. The relationship of the licensee to the car in cases that have come to my attention seem to make a difference. In the case of Perrodin v. Thibodeaux [La.App.], 191 So. 148 [151], the named assured in the insurance policy was the Police Jury, and the Omnibus Clause recited among other things that the operation of the truck must be with the permission of the named assured, in order to hold the insurance company liable. Thomas Thibodeaux had control and legal possession of the truck for the said Police Jury relative to its use and safe-keeping, and he occupied the same position in that case that Lacaze does in this one. He gave permission to his son, Russell, to use the truck to attend a fish-fry on the day of the accident. The son left the fish-fry and had gone off on another trip, without the knowledge or consent of his father, and before returning home and while on this personal mission, had his accident.
"The Court said further, as follows:
"`As there is no question but that Russell Thibodeaux had the permission of his father to whom the care and custody of the truck was entrusted to use the truck in going to and from the fish-fry, the fact that young Thibodeaux extended his pleasure trip to Rayne would not, under the holding in the two cases, make his use of the truck at the time of the accident without the permission of the assured.'
"The two cases referred to were Parks v. Hall et al.,189 La. 849, 181 So. 191, and Haeuser v. Ætna Casualty Surety Co. et al., La.App., 187 So. 684. Again, in the same case, the Court said as follows:
"`However, as we have reached the conclusion that the insurance company is liable as young Thibodeaux was driving the truck with the permission of the assured whether he was on a mission for the Police Jury or for his own pleasure, * * *.'
"Now, it is perfectly clear, from a careful study of the decision in this case, that the Police Jury itself did not consent to nor even know of the trip by Russell Thibodeaux. No one could be heard to say that Thomas Thibodeaux was given the possession of that truck for the purpose of permitting his son to use it to go to a fish-fry. This truck was the property of the Parish of St. Landry, and the Court, in reaching its conclusion, must have known that the purpose of placing it in the hands of Thomas Thibodeaux was for the restricted use as road foreman. It seems to me that such a restriction placed on that truck would be analogous to the written restrictions placed on his truck by Mr. Dey, and accordingly, the full legal possession and control being in Arthur Lacaze and he having given his consent to the fatal trip taken by Leo Berryman, would also place Leo Berryman in the category of an additional insured.
"That portion of the Omnibus Clause providing that at the actual use must be with the permission of the named insured must be called by this Court ambiguous, otherwise there could not have been placed on it by the various courts all over the country so many different interpretations, and where a clause is found to be ambiguous, it must be strictly construed against the insurer.
"The case of Perrodin v. Thibodeaux above referred to nearer covers the facts in the case at bar than any other this Court has been able to find. The case of Parks v. Hall above referred to turned on the question of deviation from the permission or instruction given, and that initial permission appears to be all that is required.
"The distinction in Louisiana between cases of the Thibodeaux type and cases such as the case of Monroe v. Heard [La.App.], 168 So. 519, seems to depend on whether or not the party in control of the automobile with the permission of the named assured and who surrenders control to a third person, has what may be called general discretion, implied from continuous control and possession, or whether his relationship is that of a casual borrower such as Mrs. Perkins was in the Monroe case. Restrictions of the named assured on the use of the automobile in the hands of the person to whom he has entrusted it, where continuous control is given, do not seem to make much difference.
"Mr. Ben. R. Miller, of the Baton Rouge Bar, in his article on the Omnibus Clause in Volume 15 of the Tulane Law Review, page 422, ventures the opinion that a general *Page 231 
discretion is vested in an employee; for example, who holds a responsible position requiring almost constant use of an automobile, who is under no specific instruction or supervision as to when or how he performs that work, and who keeps the automobile at his own premises when not in use and one having such a general discretion can in his opinion give another the required permission, and cites several cases in support of his contention, one of which was the Thibodeaux case.
"Since this Court must look to the Appellate Courts for interpretations of contracts and the law involving the same, and since in this Court's opinion the facts in the Thibodeaux case are a closer parallel to the facts in the case at bar than any other found or cited, it is this Court's opinion that Leo Berryman was an insured, under the terms of said policy, and now so holds.
"On the question of quantum of damages, it is true that in a suit involving these same plaintiffs and Leo Berryman, to which suit the Metropolitan Casualty Insurance Company, et al., was not a party, nor was Mr. Dey, judgment was rendered by default against Leo Berryman in the sum of $6309.30. I am not sure what the effect of fixing the amount of damages in that suit will have under the law in arriving at the amount of damages in this suit, perhaps it may govern and perhaps it does not, I don't know. However, it is this Court's opinion that considering the age of the decedent and other factors by which the damage should be assessed, that the amount was too high and should be reduced by $2000.00.
"Therefore, let there be judgment in favor of Gordon Clemons and Vernon Clemons against the Metropolitan Casualty Insurance Company in the sum of $4309.30, with legal rate of interest from judicial demand and all costs."
We do not agree with the lower Court in its application of the law to the facts it found.
Plaintiffs did not appeal from the judgment rejecting their demands against Dey. The Insurance Company did appeal from the judgment against it. The only defendant, therefore, which is now before the Court, is the Insurance Company and the only question on the merits of the case to be determined by us is whether or not Leo Berryman, the driver of the truck, was an additional insured under the terms of the policy issued by appellants. The only way, under the terms of the policy, that Berryman could have been an additional insured was for him to have had permission to drive the truck from the insured, Dey. It is admitted that he did not have direct permission from the insured and the record discloses he was not on any mission for the insured and the use of the truck by him was not part of his remuneration for his labor. The permission he had was given by Lacaze, the plantation foreman for the insured, whose use of the truck was restricted by written orders from the insured. One of the restrictions was that no one was to be allowed to drive the truck except Lacaze and, in case of an emergency which prevented Lacaze from driving the truck, his wife must go with it. If these written instructions had been violated by Lacaze at any time, it had not come to the knowledge of the insured, and when Lacaze gave permission to Berryman to drive the truck on the night of the fatal accident, it was a direct violation of the written instructions from the insured to Lacaze, and Berryman was driving the truck without the permission of the insured and was not any additional insured under the terms of the Omnibus Clause in the policy of insurance.
In the case of Parks v. Hall, 189 La. 849, 181 So. 191, and the many cases which have followed it, the courts have consistently held that the permission of the insured must be present in order for the operator of the car or truck to be an additional insured. Wilson v. Farnsworth, La.App., 4 So.2d 247; Burglass v. Burglass, La.App., 193 So. 275; Stephenson v. List Laundry Dry Cleaners,186 La. 11, 171 So. 556. These cases only require the permission to be for the initial possession of the truck and hold that if one has permission from the insured when he gains possession of the car or truck, the permission continues even though he uses the vehicle for purposes other than those for which he acquired possession.
Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., vol. 6, § 3943, page 326, provides:
"Permission to drive does not confer upon the licensee the power to confer permission, and one driving under this derivative, and therefore defective permission, is not an additional assured." *Page 232 
Also see Monroe v. Heard, La.App., 168 So. 519.
Lacaze had permission of the insured to drive the truck, but instead of having the authority to confer permission to Berryman, was forbidden in writing to do so by the insured. The lower Court based its decision almost entirely upon the opinion in the case of Perrodin v. Thibodeaux, La.App., 191 So. 148. We are of the opinion the distinction between that case and the one at bar is in the facts. The basis of the decision by the lower Court is summed up in the following language in its opinion interpreting the Perrodin v. Thibodeaux case:
"This truck was the property of the Parish of St. Landry, and the Court in reaching its conclusion must have known that the purpose of placing it in the hands of Thomas Thibodeaux was for the restricted use as Road Foreman. It seems to me that such a restriction placed on that truck would be analogous to the written instructions placed on his truck by Mr. Dey, and accordingly the full legal possession and control being in Arthur Lacaze and he having given his consent to the fatal trip taken by Leo Berryman would also place Leo Berryman in the category of an additional insured."
Counsel for appellant in their brief point out the error in the lower Court's opinion and conclusion, wherein it found the Perrodin v. Thibodeaux case to be analogous to the case at bar, as follows:
"A careful reading of that case reveals nothing to substantiate the trial Court's reasoning and conclusions. In the Thibodeaux case, the Police Jury of St. Landry had placed in the custody of Thomas Thibodeaux, the Road Foreman for the Parish, the vehicle in question. The truck, of course, was purchased by the Parish to be used in building and maintaining its roads. To what extent the Road Foreman was authorized to use the truck is not disclosed by the record nor does the record show what use of the truck was customarily made by the Road Foreman. The Foreman allowed his son to use the truck to go to a fish-fry. After leaving the fish-fry, the son started off on another side trip and while on that trip, the accident out of which this suit arose occurred. The Court decided that in view of the fact that the son had permission to use the truck in the first instance that the fact that he had extended his trip beyond the purpose for which the truck was originally secured was immaterial. Nowhere in this case does it appear that there was any question raised concerning the right of the Road Foreman to grant to his son the permission necessary to authorize him to use this truck. The trial Court, however, saw fit to presume that the Police Jury had placed restrictions upon the use of the truck and presumed that the Road Foreman had been instructed not to allow the truck to be used for anything other than road purposes, and under such presumptions concluded that this case was analogous to the present facts before the Court. We respectfully urge that there is no reason to make such presumption. As a matter of fact, it is more logical to presume to the contrary in view of the fact that such a defense was not raised by the attorneys for the insurer.
"After concluding that the Thibodeaux case was analogous to the one before the Court (relying upon its own presumptions of fact) the trial Court then proceeds to distinguish that case from Monroe v. Heard, supra, saying that the distinction depended upon whether or not the party in control of the automobile with the permission of the named assured and who surrenders control to a third person, has what may be called general discretion implied from continuous control and possession. It is indeed difficult for us to understand how it could be implied that Arthur Lacaze had general discretion of the use of this truck in face of the undisputed fact that his use of the truck was regulated by very specific written instructions given to him by the owner. The trial Court cites an article in 15 Tulane Law Review 422 in which the writer `ventures an opinion that a general discretion is vested in an employee * * * who is under no specific instruction or supervision * * *.' The Court failed completely to recognize the fact that Berryman was not an employee of the named assured and that Lacaze had custody of the truck under specific instructions."
We agree with the views expressed by counsel. The two cases are not analogous and, to our minds, the case of Perrodin v. Thibodeaux is not authority for a decision in the case at bar finding Leo Berryman to be an additional insured under the Omnibus Clause in the policy of insurance issued by appellant to Mr. Dey, the owner of the truck, being driven by Berryman at the time of the fatal accident, and the judgment *Page 233 
of the lower Court so finding is erroneous and will have to be reversed.
Appellant filed below a plea to the jurisdiction and an exception of no cause of action, which were overruled. In this Court, they are again urged, but counsel for appellant in argument and brief stated that because of their sincere belief in the strength of the defenses urged upon the merits of the case, they hesitated to urge in detail the plea and exception which were overruled below. Counsel for appellee has made no mention of either in his brief.
We seriously doubt if there is merit in the plea to the jurisdiction or the exception of no cause of action and, since we are convinced of the correctness of our opinion on the merits, we prefer not to disturb the finding of the lower Court on the plea to the jurisdiction and the exception.
It is therefore ordered, adjudged and decreed that the judgment of the lower Court in favor of plaintiffs and against the Metropolitan Casualty Insurance Company is reversed and the demands of plaintiffs are rejected at their costs.