This is a suit for damages for personal injuries and property losses sustained by plaintiff in a collision between his automobile, being driven by him, and a truck owned by defendant George Thomas and being driven by defendant Saul Williams, which collision occurred between ten and eleven P.M., in the Town of Ponchatoula, on January 12, 1946. The plaintiff was travelling west on the Ponchatoula-Madisonville paved highway and after passing an automobile ran into the truck. He alleges that the sole cause of the accident was the gross negligence of Saul Williams, the truck driver, in the operation of the truck, contending that the truck had no lights and was backed into the paved highway from the south side thereof without any warning whatsoever and with utter disregard of traffic thereon, and, in effect, that while plaintiff was driving with all due caution and at a reasonable rate of speed (25 miles per hour) he could not possibly prevent running into the truck, as it blocked the highway completely and was not seen until plaintiff was within about 15 feet of it, having been temporarily blinded by the lights of a car travelling east immediately before being confronted by the truck. The defendants are Saul Williams, the driver of the truck, and George Thomas, his employer, under the doctrine of respondeat superior, and American Casualty Company, as insurer of George Thomas. The damages claimed are in the total amount of $38,600.00, $3,000.00 for loss of farm income caused by the disability sustained by plaintiff and the remainder for personal injuries, pain and suffering and hospital and medical expense.
The defendant filed an exception of vagueness which was overruled and thereafter filed their answer in which they denied any negligence on the part of Saul Williams and contended that the accident was caused solely by the gross negligence and carelessness of the plaintiff and of his guest passenger, Herbert Lee Lavigne; that at the time and prior to the accident Saul Williams was using and operating the truck without the knowledge, permission or consent of George Thomas, and on a mission entirely personal to him; that Williams was driving the truck in a careful manner on his proper side of the highway going west ahead of plaintiff Dominguez and that Dominguez and his companion were driving at a rapid rate of speed and without keeping a proper lookout and consequently ran into the rear of the truck. The defendants Thomas and his insurer further contend that in any event, since Williams was driving the truck outside the scope of his employment and without the knowledge and *Page 41 
consent of Thomas, that they are free of any liability.
On trial on the merits the District Court rendered judgment in favor of plaintiff and against the employer and insurer, in solido, for the sum of $5,861.00, plus legal interest and costs. The defendant employer and insurer have appealed. The defendant Saul Williams was not served or cited and is therefore not a party to this appeal. The plaintiff has answered the appeal, praying that the award be increased to the amount of $15,000.00. Before us the exception of vagueness is again urged. It is levelled at Articles 5, 20 and 21 of plaintiff's petition.
The complaint of defendant relative to Article 5 is that it fails to disclose how plaintiff was proceeding on the paved highway; whether in a vehicle and if so, what type of vehicle.
In Article 20 plaintiff avers "that he has been unable to work since the accident, that he was engaged in farming resulting in the loss of his farm crops, and for which he would have reasonably recovered * * * the sum of $3,000.00." In Article 21, plaintiff avers that he has had "hospitalization, medical, dental and incidental expenses amounting to $600.00." As to Article 20, the defendants contend that they are entitled to be informed what acreage was planted and what crops were planted on such acreage. As to Article 21, the defendants contend that they are entitled to know the names and addresses of the physicians and dentists, or other persons who gave him attention and the respective amounts paid therefor.
Although we find merit in defendant's exception and probably it should have been sustained, ordering plaintiff to amend his petition, yet due to the conclusions we have reached on the merits, we will refrain from passing on the exception.
As to the merits of the case we have no way of knowing how the trial judge reached his conclusions, for he has failed to favor us with written reasons in support of his judgment. However, there are three main questions involved on the merits, to-wit: (1) Has the plaintiff proved that the accident was caused solely by the negligence of Saul Williams, the defendant truck driver? (2) If so, has it been shown that the negligence of the truck driver can be charged to the employer and his insurer, under the doctrine of respondeat superior? (3) Does the omnibus clause of the insurance policy cover the truck driver under the facts adduced in this case?
We will first discuss and pass upon questions 2 and 3 supra for the reason that if we find there is no liability on behalf of the defendants Thomas and his insurer, there will be no need to discuss and pass upon the negligence of Williams and the contributory negligence of the plaintiff.
With reference to the question as to whether or not George Thomas and his insurer can be held liable for the negligent acts of Saul Williams, we have the following situation: It is shown that George Thomas was operating a saw mill and that in connection therewith he turned over the truck in question to Saul Williams for the express purpose of taking other employees of the saw mill back and forth from work to their respective homes and for the additional purpose of delivering stove wood from the saw mill to various customers. It is further shown that customers for stove wood ordered same either directly from the saw mill or through the driver. It was testified by Mr. Thomas, the employer, and by Saul Williams that it was clearly understood that while the truck would be kept by Williams at his house it was to be used only for the purposes stated above and not for his personal use; this testimony is unrebutted. It is shown that on the night of the accident, which occurred between ten and eleven o'clock at night, Saul Williams received a message that a fellow employee had driven his car into a ditch some three miles west of the scene and that he went over there to assist him. Both Williams and the employee fully realized that the mission had nothing to do with their employer. The plaintiff called several witnesses who had purchased stove wood delivered by Saul Williams and tried to show that he was in the habit of delivering stove wood at all hours, including that night, but none of these witnesses testified that they had ever received a delivery at night. There is no showing at all that on the particular night of the accident that *Page 42 
Saul Williams was in the act of doing anything even remotely connected with his employment, and further it is shown that he did not have the permission or consent, either expressed or implied, of his employer to use the truck as he did on the night of the accident.
The instant case is similar to the case of Waddell v. Langlois et al., 158 So. 665, 667, decided by us. In that case, an employee, Wilmer Langlois, of the Istrouma Water Company, a defendant in the case, was furnished with a truck to use in his duties during the day and to be kept in a garage on the premises of his father, Joseph Aubin Langlois with whom he resided, in the event of emergency work at night. In that case, like in this case, the employee had been expressly forbidden to drive the truck except in the use and service of the water company. On the day of the accident, after his day's work was over, the employee drove the truck home, but did not put it in the garage; changed his clothes and went to a picnic on the Amite River, about nine miles from his home. Later in the evening, on his return from the party and while driving his date to her employment, he was involved in an accident. We stated that "the truck, in going to the picnic and in returning therefrom to the General Hospital (where the employee's date was employed) in Baton Rouge, was not being driven in the exercise of the functions in which the driver was employed. The truck had been driven home at the termination of the day's work. When Wilmer (the employee) got into it again, after going home, for the purpose of driving to the picnic, it was not a continuation of the drive home, but the commencement of a new journey, a new drive, which, from its commencement at the home, until its termination at the place of collision, was not in the exercise of the functions in which he was employed, but in pursuit of his own private business and pleasure. In so far as concerns the water company, it was wrongful, illegal, and unauthorized from start to finish." We absolved the water company from liability.
In that case, like in the case at bar, it was contended that the insurer of the truck was liable under an omnibus clause contained in the liability insurance policy covering the truck. The only real difference between the two clauses is that the word "actual" appears before the word "use", but it has been held that the word "actual" in this place neither adds nor detracts from the insurer's liability under the omnibus clause. In the Waddell case, supra, under the facts heretofore stated, we stated: "Having found that driving the truck by Wilmer Langlois from his home to the picnic, and on the return trip, in taking Davis and Miss Waddell to her destination in Baton Rouge, was not driving it with the permission and consent, express or implied, of the named assured." We held that the demand of plaintiffs against the insurer had been properly rejected.
The plaintiffs rely upon Parks v. Hall et al., 189 La. 849,181 So. 191, and Haeuser v. Ætna Casualty and Surety Company et al., La. App., 187 So. 684, the latter case having been decided by the Orleans Court of Appeal.
The facts in the Parks v. Hall case, [189 La. 843, 181 So. 192] supra, are in one material respect different from those of the present case. In that case, as stated by the Supreme Court, "the facts pertinent to the issue involved are that Harvey Hall had been in the regular employ of M. L. Gans as chauffeur for a period of about six years prior to the accident. His duties were to drive the car while his employer, who was a salesman, called on his customers, and on their return to Monroe on weekends, he also washed and greased the car, which was usually done at Massey's Service Station No. 1. But when the rack at that station was not available, he was allowed to use Massey's Station No. 2. After he finished the washing and greasing job, it was his duty to return the car either to his employer's home or wherever designated by him. While the record affirmatively shows that Hall did not have authority to use the car for his own purpose, nevertheless his employer never questioned Hall about the use of the car nor complained about the time the car was brought back after having been washed and greased. The record also shows that when the wash rack at the service station was occupied, Hall would sometimes wait until it was available and at other times he drove away from the place, *Page 43 
drove around, and returned later — sometimes to his home, and at least on one occasion he did not return the car to the residence of his employer until late in the afternoon. On the day of the accident, Hall drove his employer to the Virginia Hotel about 9:30 a.m., and was instructed, after washing and greasing the car, to inquire about some packages at the express office, and then to return to his employer's residence where Gans would meet him. Hall drove to the Massey Station No. 1, on De Siard street and found that the wash rack was being used. Without narrating in detail the movements of the defendant Hall from then until the time of the accident, about 3 o'clock that afternoon, suffice it to say that at the time of the accident he was returning from a trip several miles out of town where he had gone to collect some money due a friend of his. According to his testimony in the record, he intended to wash the car as soon as he brought the women, who had accompanied him and his friend on the trip, to their home which was within walking distance of the service station."
In the Haeuser case, supra, the employer of one Kerner was instructed to return the automobile to the owner's garage. He did not do so immediately, but departed from the scope of the permission given by his employer by conveying some friends to their home, and while thus engaged, the accident happened. The facts are very similar to those of the Parks v. Hall case in that in both cases there was merely a departure from the original permission to drive the automobile, and under the decision in the Parks case the insurer in the Haeuser case was properly held liable.
There is a fundamental difference between the facts of the two cases, in each of which the insurer was held liable under the omnibus clause, and the facts of the present case, and it is this: In both of the cited cases, at the time of the occurrence of the accident, the employee had actually taken the automobile for some purposes contemplated by the employer or owner and had only stepped aside or deviated from the accomplishment of such purpose, whereas in the present case the truck had been stored in its usual storage place, after working hours, and some six or seven hours thereafter was taken therefrom, without the knowledge or consent and against the specific instructions of the employer, by the employee for the employee's personal mission. This difference in facts is pivotal.
We are firm in our opinion that the case of Waddell v. Langlois, supra, controls the decision of this case; and as expressed by us in that case, the taking of the truck from its usual parking place by Saul Williams, long after working hours, without the knowledge or consent and against his employer's specific instructions for his personal use was wrongful, illegal and unauthorized from start to finish and therefore the driving of the truck by Saul Williams on the night of the accident was not with the permission and consent, express or implied, of the named assured and it follows that plaintiff's demand against the insurer of the truck has to be rejected.
Our conclusions reached in the present case may seem to a casual reader to be in conflict with the decision of the Supreme Court in the case of Stanley v. Cryer Drilling Co. et al., 213 La. 980, 36 So.2d 9, 12. However, the case is clearly distinguishable from the present case in that in that case the Supreme Court found that the record showed that Robinson, the employee of defendant, was never instructed by Cryer, his employer, or Hayes, who was in charge of the field operations, that the use of the truck was restricted to business purposes, although about a week after Robinson's employment Cryer did tell Robinson he could not haul anything in the truck for anyone else, because this use of the truck was not authorized under the truck license and was not covered by the insurance. The Supreme Court stated: "* * * it is significant that the only instructions given Robinson by Cryer with respect to the use of the truck was that he should not haul anything in the truck for anyone else because such use of the truck was not only unauthorized under his truck license but was not covered by his insurance, necessarily implying that such use as wascovered by the insurance was authorized", thus holding that Robinson had the implied permission of Cryer to use the truck for his, Robinson's personal pleasure. (Italics ours). In our case, Saul *Page 44 
Williams' specific instructions were not to use the truck for any other purpose but that of his employer.
For these reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is hereby annulled, reversed and set aside, and it is now accordingly ordered that there be judgment in favor of the defendants George Thomas and the American Casualty Company and against the plaintiff dismissing plaintiff's suit, all at plaintiff's costs in both courts.