46 So.2d 744 (1950)
217 La. 487
DOMINGUEZ
v.
AMERICAN CASUALTY CO. et al.
Nos. 39224, 39240.
Supreme Court of Louisiana.
April 24, 1950.
*745 Carroll Buck, Amite, and Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for American Casualty Co. et al.
Joseph M. Blache, Jr., Hammond, and Ponder & Ponder, Amite, for John C. Dominguez.
SPAHT, Justice Ad Hoc.
This suit was instituted by plaintiff Dominguez against George Thomas, his employee Saul Williams, and his insurer, the American Casualty Company, in solido, to recover the sum of $38,600 damages allegedly incurred as a result of an automobile accident which occurred on the Madisonville-Ponchatoula paved highway as it enters the town of Ponchatoula, between 10:30 and 11:00 p. m. on Saturday, January 12, 1946, when the Plymouth coupe owned and operated by the plaintiff ran into a Dodge truck with a log trailer operated by the defendant Williams, the employee of defendant Thomas. Plaintiff contends that the accident was caused solely by the negligence of the truck driver, Williams, who was at the time operating the truck in the course of his employment and with the permission of his employer.
The defendant Williams was not served or cited; defendants Thomas and the American Casualty Company excepted to the petition on the ground of vagueness, which was overruled, and thereafter filed a joint answer denying any negligence on the part of Williams, and also denying that at the time of the accident the truck was being used and operated with the knowledge, permission or consent of the employer, or that Williams was engaged in any business or mission for his employer; in the alternative, they averred that the contributory negligence of plaintiff was the proximate cause of the accident.
The trial court gave judgment in favor of plaintiff for $5,861, and the defendants Thomas and the American Casualty Company appealed. The Court of Appeal, after concluding from the facts of the case that the truck was not being used by Williams in the course of his employer's business or with the permission of his employer, held that granting the negligence of Williams, *746 any injury sustained by the plaintiff as a result of the accident was not chargeable to the employer and his insurer under the doctrine of respondeat superior, nor was the driver Williams covered by the omnibus clause of the policy, and consequently, found it unnecessary to pass on the proximate cause of the accident since no judgment had been rendered against Williams. See, 37 So.2d 40; 37 So.2d 412.
Both the plaintiff and the defendants sought to have this court review the judgment of the Court of Appeal for the First Circuit reversing the judgment of the district court and dismissing the suit of the plaintiff and the matter is now before us on writs of certiorari granted them.
The facts pertinent to the issues involved are that Williams had been employed as the driver of a truck for a period of about four or five months previous to the accident by Mr. Thomas, who operated a sawmill and sold wood. Williams' duties were to drive the employees to the mill in the morning, deliver loads of wood during the day, and take the employees back into town in the evening, after which he drove the truck to his home and parked it until the following morning. On the night of the accident Williams had gone some three miles west of the scene of the accident to the assistance of a fellow employee, whose car had run into a ditch, with the intention of pulling the car back onto the highway. Williams, who testified in the case, says that he was proceeding west at about 20 miles per hour, on the east-west paved highway, returning to his home in Ponchatoula, and was struck from the rear, on the left, by plaintiff. Plaintiff contends that Williams must have backed onto the highway from a side road with the intention of proceeding east, since the truck, without lights, suddenly appeared at a 45 degree angle blocking the highway, and facing in a south-easterly direction, and that his right front wheel struck the left rear wheel of the truck. Plaintiff also says that immediately before the accident he was blinded by the lights of a passing car, and that he was traveling at about 25 miles per hour. Although a street light was within a block, the night was rainy and foggy and visibility was poor; however, plaintiff claims that if the truck had been on the highway previous to the approach of the other car, he would have seen it. The body of the truck was torn in half, the cab and chassis being thrown to the north of the highway and the rear wheels coming to rest south of the highway in the ditch. Plaintiff's car stopped about 175 feet west of the point of impact, in an upright position, partly on the highway and partly on the shoulder. Both plaintiff and his passenger were seriously injured.
The Court of Appeal found it unnecessary to discuss and pass upon the negligence of Williams and the contributory negligence of the plaintiff in view of its finding that there was no liability on the part of the defendants, Thomas and his insurer; and therefore the question for our determination is whether the Court of Appeal was correct in its conclusion that Williams was operating the truck without the permission of the insured within the contemplation of the policy.
This policy contains the usual and customary clauses with reference to use and permission and they read as follows:
"Item 5Use: The purposes for which the automobile is to be used are commercial, pleasure and business.
"(a) The term `pleasure and business' is defined as personal, pleasure, family and business use.
"(b) The term `commercial' is defined as used principally in the business occupation of the named insured as stated in Item I, including occasional use for personal, pleasure, family and other business purposes.
"(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."
"IIIDefinition of Insured: The word `insured' wherever used in coverages A and D and the other parts of this policy, when applicable to such coverages, includes the named insured, and, except where it is specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided *747 the actual use of the automobile is with the permission of the named insured * * *."
The meaning of the latter clause commonly called the Omnibus Clause under circumstances somewhat similar to those in the present case has been before this court as well as the Courts of Appeal of this state on several occasions: Waddell v. Langlois, La.App., 158 So. 665; Stephenson v. List Laundry & Dry Cleaners, 186 La. 11, 171 So. 556; Parks v. Hall, 189 La. 849, 181 So. 191; Perrodin v. Thibodeaux, La.App., 191 So. 148; Farnet v. De Cuers, La.App., 195 So. 797; Wilson v. Farnsworth, La.App., 4 So.2d 247; Clemons v. Metropolitan Casualty Insurance Co., La.App., 18 So.2d 228; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9; Waits v. Indemnity Insurance Co. of North America, 215 La. 349, 40 So.2d 746; Cusimano v. A. J. Spiess Sales Co., 153 La. 551, 96 So. 118; Goldman v. Yellow Cab Company, 17 La.App. 450, 134 So. 351; Mathehy v. United States Fidelity and Guaranty Co., La.App., 181 So. 647; Mancuso v. Hurwitz-Mintz Furniture Co., La.App., 181 So. 814; James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9; Oliphant v. Town of Lake Providence, 193 La. 675, 192 So. 95; G'Sell v. Cassagne, La.App., 12 So.2d 51.
The Waits case, supra, was decided by this court after the present case was decided by our brothers on the Court of Appeal of the First Circuit, and it is conceded by counsel for respondents herein that unless that decision is overruled the decision of the Court of Appeal in the present case must be set aside. We believe it must even be conceded that the facts concerning the lack of permission in that case were stronger than exists here. There, the truck was not parked at the home of the employee as in the present case, and, furthermore, the use by the employee at the time of the accident was further removed from the contemplated use than in the present case.
Another decision by this court where the facts and the policy provisions are somewhat similar to those here is the case of Stanley v. Cryer Drilling Co., supra. There the employee, as here, had continuous possession of the truck and parked it at night in the road in front of his house. There is this difference, however, for there the employer had not specifically instructed the employee not to use the truck for his own personal use.
A study of the jurisprudence of the various states of this nation on this subject of "Omnibus Clause cases" quickly shows that the decisions are both numerous and far from uniform as to rules followed, the opinions using a varied assortment of legal theories to support their finding in each individual case. There is one recent comprehensive compilation of the Omnibus Clause cases dealing with an employee of the assured in 5 A.L.R.2d 600 under the heading "Automobile Liability Insurance: Permission or Consent of the Employee's Use of Car Within Meaning of the Omnibus Coverage Clause."
Reference to this study indicates that there are generally three different lines of authority dealing with the question of "Permission" to an employee in an Omnibus Clause. One group of jurisdictions, including Louisiana, holds that initial permission by the employer is all that is required, and another, and smaller group of states, follows the so-called strict or conversion rule to the effect that the exact use of the vehicle at the time and place of the accident must have been with the permission of the employer. The third group of jurisdictions follows a less definite rule between the extremes of the other two rules and holds that it is necessary to consider the extent and effect of the particular deviation involved, minor deviation being considered with permission, major deviation being considered without permission, and therefore without Omnibus Coverage. The leading case in the "Initial Permission" states is the case of Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500, followed by Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368.
In the Dickinson case the court went so far as to say that the purpose of the Omnibus Clause was not only to protect a person legally operating the car with the permission of the insured, but also to protect *748 any person injured by the operation of the car by giving him a cause of action against the insurer for injuries deemed by the law to have been caused by the operation of the car. This purpose likewise was adopted by the court in the case of Fried v. London Guarantee and Accident Co., 136 Misc. 740, 242 N.Y.S. 60.
Louisiana as far back as 1938 in the Parks v. Hall case, supra, aligned itself with those states liberally construing the word "Permission" and our courts have consistently followed that course to the present time. It is firmly imbedded in our jurisprudence and no good reason has been pointed out for changing this established jurisprudence.
The first question, therefore, is whether the facts in the present case are such as to distinguish them from those in the Parks v. Hall case, and subsequent jurisprudence, except the Waits case. Able counsel for respondents contend that there is a distinct difference in that here the employee had completed his day's work, and parked the truck for the night in his yard, where he had been so instructed by his employer to park it; and thus, ended the initial permission for its use for that day, while in the Parks v. Hall case, and others following it, there was merely a deviation from the course that the employee was instructed to follow, and the initial permission had thus not been terminated.
It is true that, as counsel for respondents point out, generally speaking where an employee is given custody of an automobile to accomplish a certain purpose and he puts the car away after completion of such purpose and thus returns it to the custody or control of his employer, or employer's agent, a subsequent retaking and additional use of the automobile by such employee is a new use for which a new consent must be given, and in the absence of a new permission the employee is not covered as an additional insured under the Omnibus Clause of the indemnity policy.
Where, however, the employee has, as in the present case, complete dominion and control of the vehicle day and night, saying he lost the initial permission merely because he parked it for a short time would be a highly technical distinction which we believe is unwarranted. For instance, here suppose that as Williams drove up to his home in the evening, after completing his day's work, and before he parked the truck, this same fellow employee had been there waiting and asked him to go down the road a few miles and pull out his car where he had gotten into the ditch, could there be any question that under the jurisprudence as established by the Parks v. Hall case, that the initial permission had been terminated? We think not.
It has been argued that under the jurisprudence of this state as established by the Waits case that the employee could take the vehicle hundreds of miles away, and even be guilty of theft, and yet the Omnibus Clause would still be effective. The answer to that is that our doctrine is based upon implied permission, that is, where an employee has been given custody and control of the motor vehicle some discretion on his part in its use must be assumed. It is not, therefore, without limitation and certainly where the vehicle has been returned to the custody of the employer or his agent, and he retakes it, or where the action of the employee is such after getting control of the vehicle as to constitute theft, permission could not be reasonably implied. Furthermore, in the present case, as has already been pointed out, the employee was merely a few miles from where he was accustomed to park the vehicle and on a mission to assist a fellow employee.
We are, therefore, of the opinion that Williams was operating the truck with the permission of the assured, Thomas, within the contemplation of the policy, and that the Court of Appeal erred in reaching a contrary conclusion.
For the above and foregoing reasons, the judgment of the Court of Appeal of the First Circuit is overruled and set aside and the case is remanded for further proceedings in accordance with this opinion and for a decision on the factual issues as to the alleged negligence of the driver, Saul Williams, and defendant's contention that *749 the accident resulted from plaintiff's own negligence, or alternatively, that plaintiff was guilty of contributory negligence.
FOURNET, C. J., concurs.
PONDER and LE BLANC, JJ., recused.
HAMITER and HAWTHORNE, JJ., dissent.
SPAHT and REGAN, JJ., participating by order of the Court.
HAWTHORNE, Justice (dissenting).
I must concede that, if the holding of this court in Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, was correct, then the majority opinion in the instant case is likewise correct, as the two cases cannot be distinguished. At the time the Waits case was decided by this court, I was of the opinion that the majority had reached an erroneous conclusion. I am still of that opinion. This court, in extending the so-called "initial permission" rule, as first announced in Parks v. Hall, 189 La. 849, 181 So. 191, to apply to the facts in the Waits case and to the facts in the instant case, in my opinion has gone entirely too far.
In the case now under consideration the Court of Appeal pointed out that under testimony which was unrebutted Thomas, the employer and the insured, had instructed Williams, the employee, who clearly understood the instructions, that, although the truck was to be kept at Williams' house at night, it was to be used only for the purposes of driving other employees back and forth from work and delivering wood, and not for Williams' personal use. The court then distinguished this casecorrectly, in my opinionfrom Parks v. Hall, supra, and Haeuser v. Aetna Casualty & Surety Co., La.App., 187 So. 684, as follows (37 So.2d 40, 43): "There is a fundamental difference between the facts of the two cases, in each of which the insurer was held liable under the omnibus clause, and the facts of the present case, and it is this: In both of the cited cases, at the time of the occurrence of the accident, the employee had actually taken the automobile for some purposes contemplated by the employer or owner and had only stepped aside or deviated from the accomplishment of such purpose, whereas in the present case the truck had been stored in its usual storage place, after working hours, and some six or seven hours thereafter was taken therefrom, without the knowledge or consent and against the specific instructions of the employer, by the employee for the employee's personal mission. This difference in facts is pivotal." (All italics mine.)
In the majority opinion of this court it is stated:
"* * * There is one recent comprehensive compilation of the Omnibus Clause cases dealing with an employee of the assured in 5 A.L.R.2d [600] under the heading `Automobile Liability Insurance: Permission or Consent of the Employee's Use of Car Within Meaning of the Omnibus Coverage Clause.'
"Reference to this study indicates that there are generally three different lines of authority dealing with the question of `Permission' to an employee in an Omnibus Clause. One group of jurisdictions, including Louisiana, holds that initial permission by the employer is all that is required, and another, and smaller group of states, follows the so-called strict or conversion rule to the effect that the exact use of the vehicle at the time and place of the accident must have been with the permission of the employer. The third group of jurisdictions follows a less definite rule between the extremes of the other two rules and holds that it is necessary to consider the extent and effect of the particular deviation involved, minor deviation being considered with permission, major deviation being considered without permission, and therefore without Omnibus Coverage. * * *"
The three rules set forth in the majority opinion are found at pp. 624 and 625 of the cited annotation, in paragraphs designated as A., B., and C., Section 11, styled "Summary of rules and of their application". It *750 is interesting to observe that in this same section two other rules are given immediately following the ones set out in the majority opinion, these being found in paragraphs designated as D. and E., p. 626, which were not mentioned in the majority opinion. These two rules are as follows:
"D. When it comes to deviations in violation of an express prohibition of the employer, practically all the courts are in agreement that the use of the automobile by the employee for personal purposes or by a third person with the employee's consent is not a permissible use within the meaning of the omnibus clause. * * *
"E. Deviation from permitted use must be distinguished from use after termination of the permission. The latter use has been held in all the cases dealing with the situation to be without the employer's permission." See also Section 19, pp. 650, 651.
The same annotation, after discussing the cases dealing with the situation where an employee obtains initial permission from his employer for the use of the insured's automobile and while using it under the permission given deviates in some way from the permitted use, continues in Section 23, pp. 660, 661:
"* * * Closely connected with, though clearly distinguishable from, this situation is the case where the employee obtains permission from the employer for a specific use of the automobile and returns it after such use but thereafter regains possession of it and uses it without having obtained a new or further permission from his employer. The question there is whether the initial permission extends to such use or whether the permission ends with the return of the automobile.
"The answer to this question is that where an employee is given custody of the automobile to accomplish a certain purpose, and he puts the car away after completion of such purpose, a subsequent retaking and additional use of the automobile by such employee is generally deemed a new use for which a new consent must be given, and in the absence of a new permission, the employee is not covered as an additional insured under the omnibus clause of the indemnity policy. In other words, the mere fact that the employee had rightful custody of the automobile for specific purposes does not give him the right to use the car for purposes not contemplated by the employer after the original bailment has been ended."
There is not any doubt that in the instant case the truck was being used by the employee for personal purposes, in violation of an express prohibition of the employer. Although he was given custody of the truck for designated purposes, after these purposes were accomplished he stored or placed it at his residence pursuant to specific instructions, and thereafter, against the orders of his employer, he regained or again took possession of the truck and used it as above set forth.
Under these circumstances, I am unable to understand how such use of the truck by the employee can be deemed to be with the permission of the employer, within the meaning of the omnibus clause of the policy.
The development of the initial permission rule in this state is unique and to my mind entirely unjustified. This rule was first announced in the case of Parks v. Hall, supra. In Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9, in which I also dissented, the rule was extended to cover an employee who took possession of the vehicle for his personal use after the end of the day's work. That case was followed by the Waits case, supra, and the instant case, both of which further extended the rule, not only to cover an employee who took possession of a vehicle for his personal use after it had been stored or placed in a designated parking place, but also to cover an employee who regains possession of the vehicle for his personal use in express violation of the employer's instructions. So far as I can ascertain, no other state in the Union has extended the initial permission rule so far.
I respectfully dissent.
FOURNET, Chief Justice (concurring).
In view of the observation in the minority opinion that the development of the *751 ("so-called") "initial permission rule" in this state (as announced in the case of Parks v. Hall, 189 La. 849, 181 So. 191, 193) "is unique and * * * entirely unjustified," I, as the author of the opinion in that case deem it necessary to point out in concurring in the views ably and well expressed in the majority opinion that the holding of the court in the case of Parks v. Hall was not based on any of the so-called rules that have developed in the jurisprudence of other jurisdictions and that is peculiar to their particular section, but, instead, that it was based on sound logic and reasoning and in accordance with the rules of construction as set out under the civil law of this state (which is in accordance with the universally accepted rule on the subject matter), that is, that an insurance policy for automobile collisions, being a written contract, must be construed according to the evident intention of the parties to be derived from all the matters usually incident thereto; that the language in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; and that where the language used in the policy is ambiguous, admitting of two constructions, it must be construed in favor of the insured and against the insurer so that the interest of the insured, who has paid a consideration for the indemnity, may be protected.
Applying these accepted rules to the policy provisions and the facts of that case, it was shown in the opinion that "If Hall, at the time of the accident, had been operating the car while attending to his regular duties, washing the car, or as instructed by his employer, then the injury would have been caused while acting within the scope of his employment and Gans would be liable under the rule of respondeat superior and the omnibus coverage clause in the policy would have no application. Under such circumstances, the insurer would be primarily liable under Act No. 55 of 1930.
"Under the facts of this case, Hall was operating the car with the permission of the assured and the policy, by its express terms, i. e., the omnibus clause, was made to cover, as an assured, any one who was driving the car with the permission of the owner of the insured car. The provisions of the policy do not limit the liability thereunder to causes arising when the permitted driver was using the car either for the owner's business or under any restricted circumstances. The language is not restricted, but used in its broadest possible sense and under the rules of construction generally applicable in cases of this kind, we must give the language used the same broad construction. The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car. In order to give the clause `provided: (a) it is being used with the permission of the named Assured,' the construction placed by the Court of Appeal and contended for by the defendants, we would have to give it a restricted and limited meaning, contrary to the rules of construction of such contracts. We would have to resolve the doubt or uncertainty or ambiguity in favor of the writer of the insurance contract."
This construction clearly gives effect to the evident intent of the parties, for the omnibus clause was included in their contract for the very purpose of covering the liability of the operator of the car as the unnamed assured, and so that any injured person would be given a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car.
In all policies issued since this decision, the insurance companies have taken into consideration this risk and charged their policyholders a premium in accordance therewith. Consequently, in all policies issued since that time the insured has not only paid for this risk but such a risk was clearly within the contemplation of the parties.