SANDERS, Justice
(concurring).
The omnibus clause here under consideration constituted the son an “insured” by virtue of his being “a resident of the same household.” Under the omnibus clauses previously before the Courts of this state, the son would have been an insured because of the express permission of his father, the named insured. This variation in policy language, in my opinion, effects no change in the initial permission doctrine as announced by this Court in Parks v. Hall, 1938, 189 La. 849, 181 So. 191. Concisely stated, this doctrine is that initial permis *201 sion, express or implied, is sufficient to constitute the operator of a vehicle an insured under the omnibus clause. It is predicated upon a rationale that the owner of a vehicle should reasonably anticipate and foresee deviations and that by placing the vehicle in the control of the permittee he impliedly consents to its extended use. Parks v. Hall, supra; Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744.
As was stated in Parks v. Hall, supra [189 La. 849, 181 So. 194]:
“The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car. * * *”
In 1941 this doctrine was said to be “unsettled” in Louisiana insofar as it related to a second operator using a vehicle with the permission of the first permittee. See Miller, The Omnibus Clause, XV Tulane Law Review 422, 428. During the ensuing years, however, this aspect of the doctrine has been the subject of further formulation by the intermediate courts of appeal. Generally, the delegation of the use or operation does not defeat coverage. The use of the vehicle by the second operator is treated the same as other deviations. The consent of the named insured is implied. Perrodin v. Thibodeaux, La.App., 191 So. 148; Donovan v. Standard Oil Co. of Louisiana, La. App., 197 So. 320; Brooks v. Delta Fire & Casualty Co., La.App., 82 So.2d 55; Garland v. Audubon Ins. Co., La.App., 119 So.2d 530. In my opinion, this rule is sound. I adhere to it.
In the case before us, William Oliver, III, the first operator, had express permission to use the automobile from his father, the named insured. He left it in the driveway of the Cazedessus residence to attend the scheduled dance with his friend. The keys were left behind under the following circumstances : Michael Cazedessus, age 15, an unlicensed driver, asked young Oliver immediately prior to his departure for the dance if he did not want to leave his car keys. Whereupon, Oliver tossed the keys to Michael saying that it might be necessary to move the car. Michael hung the keys on the key rack used by the Cazedessus family.
Shortly after young Oliver’s departure, Michael drove the automobile into the City of Baton Rouge where the accident occurred, which gave rise to this litigation. It is conceded that he did not have express permission from the named insured for the use of the automobile at the time of the accident.
The precise question here presented is whether under the circumstances the per *203 mission of William Oliver, Jr., the named insured, for the use of the automobile by Michael Cazedessus can be implied from the initial permission to his son.
For the permission to “carry over” to Michael Casedessus, it must be established by a preponderance of the evidence that he had permission of young Oliver tó use the automobile.
The statement of young Oliver at the time of his departure was to the effect that he consented that the vehicle be moved if necessary, referring to the movement of other automobiles in the driveway. This narrow permission was conditional only. It was not granted specifically to Michael, for Oliver did not specify who. was to move it. At no time did Michael receive permission to drive to Baton Rouge in it or to operate it on the public highways.
A driver’s license is required for the operation of an automobile on the public highways of this state. LSA-R.S. 32:402 provides in part:
“It shall be unlawful for any person to drive a motor vehicle on any highway unless he has been issued a license by the department in accordance with the provisions of this Chapter.”
Permission for an unlicensed driver to operate an automobile on the public highways cannot be lightly inferred. In my opinion, it was not established that the driver had the permission of young Oliver to use the vehicle at the time of the accident. Moreover, it cannot be implied that the named insured granted permission for the use of his automobile by an unlicensed driver in violation of the above statute. Kneeland v. Bernardi, 317 Mass. 517, 58 N.E.2d 823; Annotation 160 A.L.R. 1218; 5A Am.Jur., Verbo Automobile Insurance, § 96, p. 98.
The rule is clearly stated in 5A Am.Jur., supra:
“Also, the view has been taken that an original permittee has no authority to delegate the permission to a second permittee who is without a license, even though the original permittee is riding in the automobile; manifestly, this view would seem to be well taken, since the initial permission, even if construed to include permission to have the automobile operated by another person, can hardly be said to cover permission to have the car operated by an unlicensed driver.”
Inasmuch as there is no implied permission flowing from the named insured, through his son to Michael Cazedessus, the latter is not an omnibus insured under the Oliver policy.
For these reasons, I concur in the decree.