122 So.2d 897 (1960)
Julian E. ROGILLIO and Hazel Marales Rogillio
v.
Eugene CAZEDESSUS, individually and as the father and natural guardian of the minor, Michael (Mike) Cazedessus and Western Assurance Company et al.
No. 5021.
Court of Appeal of Louisiana, First Circuit.
June 22, 1960.
Rehearing Denied September 23, 1960.
*898 Arnold J. Gibbs, Baton Rouge, for plaintiff.
Kantrow, Spaht, West & Kleinpeter and Borron, Owen, Borron & Delahaye, Baton Rouge, for defendants.
Breazeale, Sachse, Wilson & Herbert, Baton Rouge, for Fidelity & Casualty Co. of N. Y.
Before ELLIS, LOTTINGER, LANDRY and PUGH, JJ.
LOTTINGER, Judge.
This and the companion suit entitled Delaune v. Cazedessus, La.App., 122 So.2d 902, No. 64793 of the Civil Docket of the Lower Court are actions for property damage and personal injuries arising out of an intersectional collision which occurred in the City of Baton Rouge on the night of December 31, 1957, between a 1954 Chevrolet pick-up truck owned and driven by Julian E. Rogillio and a 1955 Chevrolet automobile operated by Michael (Mike) Cazedessus.
The Chevrolet automobile driven by Michael Cazedessus was owned by William J. Oliver, Jr., a party defendant, and was insured by Fidelity and Casualty Company of New York, also a party defendant. At the time of the accident Michael Cazedessus was a minor fifteen years of age residing with his father, Eugene R. Cazedessus, also made a party defendant. The elder Cazedessus was the owner of two automobiles, one insured with the Western Assurance Company and another with St. Paul Fire and Marine Insurance Company, both of the latter being also parties defendant.
Parties plaintiff are Rogillio, his wife, Mrs. Hazel Morales Rogillio, and a couple who was with them, Charles E. Delaune and his wife, Mrs. Margie Ruth Lewis Delaune. The consolidated cases were tried on the merits in the Court below and, following argument and submission, judgments were rendered in favor of William J. Oliver, Jr. exonerating him from all liability, *899 and in favor of plaintiffs and against all other named defendants as follows:
1) Julian E. Rogillio in the amount of $3,951.28, of which $2,500 was for personal injuries and $1,451.28 was for special damages.
2) Mrs. Hazel Morales Rogillio in the amount of $500 for personal injuries.
3) Charles E. Delaune in the amount of $2,508.25 of which $1,000 was for personal injuries and $1,508.85 was for special damages.
4) Mrs. Margie Ruth Lewis Delaune in the amount of $500 for personal injuries.
The judgment rendered in each case decreed the Fidelity and Casualty Company of New York to be the primary insurer for the payment of the amounts set forth and, as the coverage was sufficient to take care of all awards, from a practical standpoint the other two carriers would not have to bear any of the loss caused by the conduct of young Cazedessus. Accordingly, suspensive and devolutive appeals were perfected in each suit by the Fidelity and Casualty Company of New York. All plaintiffs have answered the appeals seeking an increase in the awards made to them.
It was stipulated that the accident was caused solely by the negligence of Mike Cazedessus, thus leaving for determination first the question of coverage by the Fidelity and Casualty Company of New York. There is little, if any, dispute as to the facts of this aspect of the case which we (as did the trial judge) find to be substantially as follows:
In the early night of December 31, 1957, William J. Oliver III, minor son of the defendant William J. Oliver, left the family home and proceeded in the 1955 Chevrolet automobile which was involved in the accident to the Cazedessus home located on the Harrel's Ferry Road some six or seven miles distant to join an older brother of Michael Cazedessus, "Lad", they having planned to double-date that night and attend the Baton Rouge High School New Years Eve dance. When he arrived at the Cazedessus home, with his date, Mr. and Mrs. Cazedessus had already left for the evening, there remaining at home only Michael, his fourteen year old sister and Lad.
After a brief discussion between young Oliver and Lad Cazedessus which resulted in a decision to leave the Oliver car there and to use one of the Cazedessus automobiles, Michael Cazedessus asked Oliver if he cared to leave his car keys and Oliver handed them to him saying that it might be necessary to move his car. Mike took the Chevrolet keys and hung them on one of three hooks on the kitchen wall customarily used by members of the Cazedessus family for keeping the keys to their two cars. The Cazedessus' had a three car garage and, following the departure of Lad and young Oliver, only the latter's car remained. Michael testified that when he suggested that the Oliver key be left he did not do so in order to obtain use of the car, but that he did then plan on "going somewhere" and, about fifteen minutes later he got in the car and embarked on the "joy ride" that was to result in the accident.
William J. Oliver, Jr. testified that he had instructed his son not to permit other children to drive the car. Young Oliver stated that Michael had never driven his parents' cars before though they had been left at the Cazedessus home on frequent occasions and that he did not give him permission to drive the car on the night in question.
Mr. Cazedessus testified that his son Michael did not have a driver's license as he would not permit him to get one and only permitted him to drive when accompanied by him or his mother.
The trial judge concluded from the above and foregoing that unquestionably young Oliver had the permission of his father to use the Chevrolet automobile on the night in question and that, by giving the keys to Michael Cazedessus, granted permission *900 to the latter to use the car, thus (the question of deviation being of no moment) rendering the father's insurer liable under the doctrine of Brooks v. Delta Fire and Casualty Company, La.App., 82 So.2d 55 and cases therein cited.
Counsel for Fidelity and Casualty Company of New York do not appear to question our reasoning in the Brooks case, supra, but contend that the Oliver insurer cannot be held liable. Their theory being that as Michael Cazedessus was not a licensed driver and had never been permitted to drive an Oliver vehicle coupled with the fact that it would not be necessary to move the car until one of the other members returned which member himself could move the car if necessary, he was never given permission to do anything with the Oliver car. They argue further that to hold the Oliver insurer liable would amount to a holding that the policy of liability insurance follows the car irrespective of the circumstances under which the car is being used and irrespective of whether the driver had permission, tacit or otherwise. With this we cannot agree.
There is no doubt in our mind that young Oliver knew that Michael Cazedessus knew how to drive and there is further no doubt but that he knew of the Cazedessus custom of hanging their car keys on the hooks in the kitchen. He left his keys for a stated purposenamely, so that his car could be moved and he knew that Michael was as capable of moving it as anyone else. After careful consideration of the evidence, we find as a fact that Oliver left the keys to the automobile with Mike intending that Mike or any other member of the Cazedessus family move the vehicle, if necessary. By so doing he conferred permission to use the car. Conceding such permission to be restrictive in nature, it was, nevertheless, permission and any use in derogation therefrom was nothing more than deviation which the Supreme Court of this state has held to be immaterial once original consent or permission is granted. Therefore, we conclude the learned trial court correctly held Fidelity and Casualty Company of New York primarily liable.
On the question of quantum, for personal injuries, the trial judge held as follows:
"We come then to the really hotly contested question in this case, the award for personal injuries. We will take up first Mr. Delaune. I am not going to try to detail the evidence in connection with his injuries, but the evidence shows, it is undisputed, that Mr. Delaune had a congenital defect in his back. The medical witnesses all agreed on that. It further shows that when he was in the military service he had some back injury but apparently of short duration, and there was no continuing disability, and that at the time of this accident he was not suffering from any disability. He has been allowed already his medical expenses and his loss of wages. As I said in connection with his claim for loss of wages, that is the only award that I can make, and I must say frankly that I think it is a liberal award. I doubt that any man would have worked every day eight hours each and every one of these 73 days, but I cannot guess how many, if any, he might have missed. So, the only other recovery to which he is entitled is for pain and suffering that he experienced and for any residual disability. I do not think from the evidence that there was any showing that Mr. Delaune's back is in any worse condition now than it was before this accident. He admittedly has a bad back, but he was born with it. This accident did aggravate that situation and did give him a period of disability, discomfort, pain and suffering. His chief loss, as I have already said I think, is loss of wages. His grandmother testified and I was about as much impressed by her testimony as I was the doctors' who were of the *901 opinion that his disability was caused by the accident in that it aggravated his congenital back defect. I think from all the evidence in the case that the award for Mr. Delaune's personal injuries should be fixed at $1,000.
"While we are on that question, because it is in the same case, we have the question of an award for Mrs. Delaune. Mrs. Delaune had very slight physical injuries. She had contusions and abrasions of one knee, but Mrs. Delaune at the time of this accident was about three and a half months pregnant with her first child, and she testified to what we might well know without any testimony, that she was concerned as to the welfare of her unborn child. The child was born normally, except she said the child seemed to be overly nervous. Well, she just has one; those of us who have a good many more than one know that that is not uncommon. But awards in those cases generally run from $250 to $500, and I think that for her mental disturbance and concern relative to that unborn child, it is natural that she should have had that feeling, that anxiety, and that, plus her physical injuries, that an award of $500 is proper in that case.
"We come now to Mr. Rogillio's personal injuries. Gentlemen, there is a situation unlike any that I have ever dealt with in the nearly nine years that I have been down here. To make it very brief, long prior to this accident it was well established that Mr. Rogillio had a ruptured disc, and when it was established, I do not know, but unquestionably at the time of this accident he was suffering from a severe case of rheumatoid arthritis. Unquestionably this accident aggravated both of those ailments, plus fracturing two ribs. To make it brief, I do not think Mr. Rogillio is in any worse physical condition today than he was prior to the accident. He was admittedly going around with a bad back, he has got a worse back than Mr. Delaune has, but it cannot be disputed that Mr. Rogillio suffered severe aggravations of both of those ailments as a result of this collision. A good many cases are cited in connection with quantum. The case more nearly applicable is the Price case. [Price v. Fidelity & Casualty Company of New York, La.App. 98 So.2d 708]. That is a case Judge Johnson tried. There was an elderly man that Mr. Bagwell said was in his fifties, or something like that, though I think Mr. Price was older than that. As I recall, he was retired from one of the plants. The evidence shows according to the Court of Appeal decision that he had had back trouble but that for some considerable time prior to the accident sued on he had been suffering no discomfort from it, it was gone. Now, Mr. Rogillio's was not. Mr. Rogillio's trouble was sometimes, of course, worse than others. For example, it was so severe that he lost over a period of about ten months when he was with the city police a total of a hundred and seventy some odd days work, and he retired on account of his physical disability. That is unlike the situation in the Price case, and the aftermath in the Price case is different. As I read that decision, even at the time of the trial of that case he was a long ways from being back to the physical condition that he was in just prior to the accident.
"Judge Johnson awarded him $5,000.00 and the Court of Appeal said, and correctly, no doubt, they had no reason to say that the award was either inadequate or excessive, and it was affirmed. I have given as close consideration as I could here to Mr. Rogillio's case and the fact that immediately after the accident he had no feeling of any particular injury but it did develop the next day or the second day thereafter, which is not uncommon, and that *902 after some preliminary treatment and because of the financial inability to pay hospital bills, he went home and he was more or less in bed for some eight to nine weeks, and no doubt disabled from doing any work. Now unlike Mr. Delaune, he has no claim here for loss of earnings, and as a matter of fact I do not suppose he had any loss of earnings. So his is based entirely on such pain and suffering as he experienced following his accident. He is now and has been, I think since last September, managing a filling station, not doing all the work that employees of filling stations do, but I take it from the testimony, including his own testimony, that his physical condition now and since as far back as last September is as good and possibly a little better than it was just prior to this accident. Let me repeat that I am not saying that Mr. Rogillio is not a physically disabled man today; I'm simply saying that I do not think the evidence shows that he is any more disabled now or that he was any more disabled as far back as last September, some nine months after this accident, than he was just prior to the accident, and that is the difference in his case and the Price case. I am of the opinion that for his personal injuries an award of $2,500 is proper, and that makes a total, if I have not added it up wrong, including specials, of $3,951.28.
"That leaves only the item of damages for Mrs. Rogillio. Mrs. Rogillio's injuries were not too serious but were considerably more serious than those suffered by Mrs. Delaune. She was at least temporarily incapacited to do her regular work, she had to undergo medical treatment, and she undoubtedly had some pain and suffering. She claims some continuing disability, which is doubtful in my opinion. It is hard to fix an award, but I think in her case that she is entitled to an award of $500. She did not have the same claim that Mrs. Delaune had; a certain part of the award made to Mrs. Delaune was because of her anxiety as to the welfare of her unborn child and that does not enter into the award in Mrs. Rogillio's case."
The above strikes us as fair and reasonable. The special awards likewise appear to be correct and will, therefore, also be affirmed.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.