George **THIBODEAUX**, Tutor of Minor Chester James Raggio, Jr.

v.

**BROWN OIL TOOLS, INC.; and The Travelers Insurance Company.**

Civ. A. No. 7183.

United States District Court
W. D. Louisiana,
Lake Charles Division.

March 9, 1961.

496

James Domengeaux, Bob F. Wright, Lafayette, La., for plaintiff.

Cavanaugh, Hickman, Brame & Holt, Lake Charles, La., for defendants.

HUNTER, Judge.

The family of Chester James Raggio, Jr., age 10, all were fatally injured in an automobile-truck collision on June 10, 1958 when a Plymouth owned by Brown Oil Tools, Inc. struck the Raggio car from the rear and knocked it into the lane of oncoming traffic where it was struck broadside by an oncoming truck.

This action was brought on behalf of the minor under Article 2315 of the Louisiana Civil Code, LSA, for damages suffered as a result of the wrongful death of his father, mother, and sister, and for serious and painful injuries to his own person.

Defendants are Brown Oil Tools, Inc. and their liability insurer, Travelers. It is admitted that the offending vehicle, a 1957 Plymouth, was owned by Brown Oil Tools, and that the car had been assigned to L. D. Irvin, an employee of Brown Oil Tools, in June of 1957 and had been in Irvin's custody and control until the date of the accident in June of 1958. Irvin kept the car at his home. His name was painted on it.

At the close of plaintiff's case and at the close of all the evidence, defendant filed motions for directed verdicts. Acting under Rule 50(b), 28 U.S.C.A., the Court denied the motions. The case was then submitted to the jury on special interrogatories propounded under Rule 49 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The interrogatories propounded and the jury's answers were:

Interrogatory No. 1: At the time of the accident, was L. D. Irvin acting within the course and scope of his employment with Brown Oil Tools, Inc.?
Answer No

Interrogatory No. 2: Was L. D. Irvin guilty of negligence in the operation of the car which was a proximate cause of the accident and injuries to Chester James Raggio, Jr., and the deaths of Chester James Raggio, Sr., Mrs. Enola Raggio and Rita Faye Raggio?
Answer Yes

Interrogatory No. 3: Was Mrs. Buxton, in the operation of the car, guilty of negligence which was a proximate cause of the accident and

injuries to Chester James Raggio, Jr., and the deaths of Chester James Raggio, Sr., Mrs. Enola Raggio and Rita Faye Raggio?

Answer  Yes

Interrogatory No. 4:  Did Mrs. Buxton, at the time of the accident, have the permission, either express or implied, of Irvin to drive the Brown Oil Tools, Inc. car?

Answer  Yes

Interrogatory No. 5:  Was Chester James Raggio, Sr. guilty of contributory negligence?

Answer  No

Interrogatory No. 6:  In accordance with the Court's instructions, what damages do you find that the minor, Chester James Raggio, Jr., suffered as a direct result of the accident, if any?

Answer  $237,500.00

Jan. 13, 1961    /s/Walter L. Hughes
Date                Foreman

The Court, applying the law to the answers, entered verdicts:

(a) For defendant Brown against plaintiff;

(b) For plaintiff against Travelers in the amount of $237,500.

Subsequent to the trial, verdict and judgment, defendant Travelers filed a timely motion to set aside verdict and judgment and to grant Travelers a judgment notwithstanding same. Travelers also filed an alternative motion for a new trial.

The evidence shows not merely that there was ample evidence to sustain the jury's answers to the interrogatories, but shows clearly, unequivocally, and convincingly that the jury's findings were correct. Travelers does not contest the correctness of the answers to Nos. 1, 3 and 5. No. 6 involves the issue of quantum which is discussed later. As to Interrogatory No. 4, the evidence is uncontradicted that Irvin not only gave Mrs. Buxton permission to drive but insisted that she drive him. As to Interrogatory No. 2, the evidence is that both Irvin and Mrs. Buxton were drunk; that Irvin remained in the car, sat next to Mrs. Buxton, and pestered her; that Irvin grabbed the steering wheel just before the accident and thus prevented Mrs. Buxton from turning to the right so as to miss the Raggio vehicle; that Irvin knocked Mrs. Buxton's foot off the brake so that she could not stop before striking the Raggio vehicle.

The Law

Counsel for Travelers argues, in brief, that *"since the jury returned a verdict against Travelers Insurance Company, it must have found that Mrs. Buxton was an insured under the omnibus clause of the contract of insurance."* This is error. The jury only answered the interrogatories. The Court entered the judgment by applying the law of Louisiana to the facts as found by the jury. The very purpose of submitting the case on interrogatories was to avoid two possible sources of error, namely, the consideration of needless questions of law, and the application of the law by the jury to the facts.

The jury having found that Irvin at the time of the accident was *not* acting within the course and scope of his employment, the Court ordered judgment in favor of Brown Oil Tools and against plaintiff. This facet of the case is not in dispute.

Section III of the policy in question reads as follows:

"The word 'insured' includes the names insured and also *includes any person while using* an owned automobile or a hired automobile *and any person or organization legally responsible for the use thereof,* provided the actual use of the automobile is by the named insured or with his permission  *  *  *"

A person who drives an insured automobile with the permission of the named insured is known as an

"omnibus insured" and is afforded coverage by the terms of the policy as a result of the negligent use of the car. The Louisiana Rule is well established that "initial permission" by named insured to a permittee is sufficient to activate the omnibus clause, notwithstanding a deviation or some subsequent unauthorized use. Parks v. Hall, 189 La. 849, 181 So. 191; Dominguez v. American Casualty, 217 La. 487, 46 So.2d 744; Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, La.App., 47 So.2d 133; Gonzales v. Beaumont Cement Sales Co., La.App., 125 So.2d 785.

▇▇ The fact that L. D. Irvin was given the Brown Oil Tools automobile on a full time basis by the named insured, Brown Oil Tools, Inc., is not contradicted. Hence, if the automobile was being "used" by the said L. D. Irvin at the time of the accident, then according to Section III above quoted, he is an additional insured, and as such, the Travelers Insurance Company is liable for his acts of negligence. The jury found that L. D. Irvin was guilty of negligence in the operation of the car which was a proximate cause of the accident and injuries, and the jury also found that there was no contributory negligence on the part of Chester James Raggio, Sr. It necessarily follows that on the basis of the answers to Interrogatories 2 and 5, the Court had no other choice but to enter judgment against Travelers in favor of plaintiff.

### Travelers' Responsibility for the Action of Mrs. Buxton

A discussion of this phase of the case is superfluous because the answers to Interrogatories 2 and 3 required a verdict against Travelers. However, Travelers in brief deals extensively with this issue and we will comment.

At the time this case was tried, this Court, following the language of Brooks v. Delta Fire & Cas. Co., La.App., 82 So. 2d 55; Garland v. Audubon Ins. Co., La.

App., 119 So.2d 530; and Rogillio v. Cazedessus, La.App., 122 So.2d 897, 902, interpreted the Louisiana law to be that when the named insured, Brown Oil Tools, assigned the car to Irvin, there was coverage for the negligent acts of any permittee of Irvin's. The Court so instructed the jury, and refused defendant's requested interrogatory as to whether or not Mrs. Buxton had the permission of Brown Oil Tools to drive the car. This request was refused for another reason, namely, there was no evidence at all of any such permission and the Court holds that as a matter of law Brown Oil Tools did not give permission to Mrs. Buxton; so that issue, while not submitted, is resolved in defendant's favor.

After the trial of this case, the Supreme Court of Louisiana reversed the holding of the Louisiana appellate court in Rogillio and expressly limited the expressions in Brooks and Garland.

My first impression after reading the Louisiana Supreme Court's decision was that the judgment against Travelers was proper but only on the basis of Interrogatories 2 and 5. That is, Irvin, the admitted permittee, was guilty of negligence which was a proximate cause of the accident, etc. On reflection and study, it now appears that the judgment against Travelers also is proper on the basis of Mrs. Buxton's proximate negligence.[1] This is true because of the Supreme Court's approval of the result in Brooks and Garland, as expressed in Rogillio et al. v. Cazedessus et al., La.Sup., 127 So.2d 734, 738. The Supreme Court there, referring to Brooks, said:

"There was coverage under the omnibus clause, and this was correct—not because Miss Dietz was the permittee of a permittee, but because she was acting for Mrs. Moreau who was present and still had direction and control of the car."

1. In no event should a new trial be granted on this phase of the case because there is no evidence of any permission either express or implied from Brown Oil Tools to Mrs. Buxton. Either there is coverage or there is not coverage under the jury's findings and the admitted facts. No factual issue remains.

Here, the jury found that Mrs. Buxton, at the time of the acident, had the permission of Irvin to drive the car. The facts are not in dispute that he was present in the car and had directed her and physically sought to control the operation of the car. It does not take much imagination to paraphrase the facts here to fit the exact language of the Supreme Court and say that:

There was coverage here under the omnibus clause, not because Mrs. Buxton was the permittee of a permittee, but because she was acting for Mr. Irvin who was present and still had direction and control of the car but had turned over the operation of the automobile to Mrs. Buxton because she was less drunk than he.

Then, too, the Supreme Court, in analyzing Garland said:

"Under the facts the correct ruling was that the omnibus clause afforded insurance protection, because the person who granted permission to use the car was for all intents and purposes the named insured."

Once again, it does not take much imagination to paraphrase the facts here to fit that language and say:

Under the facts here, the correct ruling was that the omnibus clause afforded insurance protection because Mr. Irvin to whom the car was totally assigned and who granted permission to Mrs. Buxton (the jury's finding) to use the car was for all intents and purposes the named insured.

### The Newly Discovered Evidence

Defendant has filed a supplemental motion for a new trial based upon alleged newly discovered and material evidence. This newly discovered evidence consists of a judgment and all related documents in Case No. 3,218, entitled State of Louisiana v. Hazel Buxton, Fourteenth Judicial District Court, Parish of Cameron, State of Louisiana. It should be noted that the Bill of Information charging Mrs. Buxton with the criminally negligent operation of a motor vehicle was first filed on the 24th day of April, 1959. This Bill of Information was certainly available to counsel for defendant. It is true that she did not plead guilty until January 13, 1961, and that she was not sentenced until January 25, 1961.

It has been uniformly held that a motion for a new trial grounded upon newly discovered evidence will not be granted unless (a) the facts discovered are of such a nature that they would have properly changed the outcome of the case; (b) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (c) the facts are not cumulative or impeaching.[2] The profferred new evidence would not, in my opinion, have changed the outcome of this case. Certainly, the "Statement of Facts" drawn by the Assistant District Attorney, which is evidently the "new evidence" relied upon could not be admissible, as it is only his opinion concerning the facts, and of course, the determination of the facts in this case falls exclusively within the province of the jury which has acted. No witnesses are claimed by defendant to have been unavailable at the time of the trial here. The mere fact that Mrs. Buxton subsequently plead guilty to the criminally negligent operation of this particular motor vehicle does not in any way effect the findings of the jury here. As a matter of fact they substantiate the findings of the jury that Mrs. Buxton was guilty of negligence which was a proximate cause of the accident. Certainly, the fact that Mrs. Buxton plead could in no way effect the jury's finding that Irvin, too, was guilty of proximate negligence. Besides, the Court has grave doubt as to the admissibility of the evidence of a criminal conviction. Reid-Elliott Motors, Inc. et al. v. Lee, La.App., 94 So.2d 160.

The Court agrees with counsel's recollection that the Court did categorically

2. English v. Mattson, 5 Cir., 214 F.2d 406.

tell the jury that if they found that Irvin had given Mrs. Buxton permission to drive the car, then there was coverage. This certainly did not constitute prejudicial error because:

(1) The instruction could have been of no consequence on any interrogatory. If so, which one?

(2) As a matter of law the Court is holding that there was no evidence sufficient to show permission from Brown Oil Tools to Mrs. Buxton, but that notwithstanding this, there was coverage for Mrs. Buxton's negligence.

### The Jury

Counsel for defendant, by brief, says that the verdict shows that "the jury approached the case with flaming passion and injudicious temper." Defendant, by brief, also argues that "the size of the verdict was influenced by the great amount of publicity this case received (1) by the fact that it was general knowledge that criminal proceedings had been lodged against Hazel Buxton, the driver of the Brown vehicle, as well as L. D. Irvin; (2) that this case had been made a *cause celebre* in the District Attorney's race in Calcasieu Parish in the summer of 1960." The record in relation to the selection of the jury is not before me, but I am sure that it will reveal that the jurors chosen to hear this case were carefully screened and questioned as to whether or not they knew anything about it, and that those finally chosen knew nothing and had heard nothing.

### Remittitur

There remains the question of quantum. The jury was instructed according to Louisiana law as to the elements to be considered.

The loss and damage to the plaintiff has been severe, painful and grievous. Defense counsel did not argue quantum to the jury. It is indeed difficult for anyone to put a price tag on a loss to an eleven-year-old boy of (1) his 43-year-old father who had been extremely close to him; (2) his 44-year-old mother who likewise had been very close to him in every motherly way; (3) his nine-year-old sister to whom he was closely attached; (4) serious and painful injuries to his own person which resulted in hospitalization and some permanent disability to his leg and foot; (5) some $8,500 in special damages; (6) loss of an entire family with resultant loss of love, affection, guidance and support attendant thereto.

Even to attempt to place a monetary value to these losses is difficult, and to say that a certain sum is exorbitant and so excessive as to "shock the judicial conscience" is indeed difficult.

Admittedly, the sum of $237,500 is a large amount of money. However, it is not in the Court's opinion such a striking amount when set opposite the terrifying loss sustained by young Raggio. Certainly, the verdict is not so excessive as to require a new trial, but we do think that all things considered that the verdict should be reduced to $178,125. Accordingly, a new trial will be granted unless plaintiff, within thirty days from this date, enters a remittitur reducing the judgment to $178,125. If plaintiff wishes to enter such a remittitur, counsel should forthwith present to the Court a proper order and decree granting judgment to plaintiff against defendant in the amount of $178,125, together with interest and costs.

Otherwise, we have considered all of Travelers' assignments of error. In our view defendants received a fair and impartial trial, and the answers of the jury to the interrogatories were in conformity with the evidence, and the entry of the judgments were proper and in accordance with law.

The motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial are all this day denied, conditioned upon plaintiff's acceptance of the Court's ruling on remittitur