GREAT AMERICAN INSURANCE COMPANY, Appellant,

v.

William E. CUTRER and Lumbermen's Mutual Casualty Company, Appellees.

No. 18818.

United States Court of Appeals Fifth Circuit.

Jan. 11, 1962.

Alvin R. Christovich, New Orleans, La., Christovich & Kearney, A. R. Christovich, Jr., New Orleans, La., of counsel, for appellant.

John W. Anthony, Bascom D. Talley, Jr., Bogalusa, La., Talley, Anthony,

Hughes & Knight, Bogalusa, La., of counsel, for appellee.

Before RIVES, CAMERON and BELL, Circuit Judges.

BELL, Circuit Judge.

This is another case brought under the Louisiana Direct Action Against Insurers Statute. LSA–R.S. 22:655. Appellee Cutrer filed suit to recover damages for serious injuries suffered when he fell down the exterior steps leading from the sidewalk to the basement of the Pine Tree Inn in Bogalusa, Louisiana, and was joined by Appellee Lumbermen's Mutual Casualty Company, Workmen's Compensation carrier for the employer of Mr. Cutrer, seeking recovery of benefits paid and to be paid Mr. Cutrer. Appellant, defendant below, was liability insurer of Pine Tree Inn Hotel, Inc.

█ Appellant denied negligence on the part of its assured and alternatively plead contributory negligence on the part of Mr. Cutrer as a bar to recovery. This appeal is from the judgment entered on a jury verdict in favor of appellees.

The facts disclose that the Pine Tree Inn was built more than thirty years ago and that the basement of the building has been in little use until it was remodeled in 1953 into a studio for a radio station. Mr. Cutrer, manager of the radio station located therein was called shortly before 6:00 A.M. on March 5, 1959 by an announcer at the station and advised that he could not find the radio "log." Mr. Cutrer slipped on his trousers over his pajamas, and drove to the station from his home in his automobile in an effort to find the "log." He parked his car in front of the inn on a gravel driveway very near the steps which were to the side of and immediately adjacent to the inn and which led from the sidewalk down to the basement location of the radio station. He was wearing "moccasins" on his bare feet. It had been raining hard during the night but was raining only slightly at the time. The steps had no cover over them. There were eight in number and the first step was slightly more than an inch above the sidewalk. Mr. Cutrer slipped as he stepped on the first step, his feet going out from under him, and he fell on his back to the bottom of the steps, rubbing off two of his fingernails on the concrete wall adjacent to the steps. There was no rail on either side of the steps.

The case was tried on the theory that the assured was not an insurer of the safety of those using the steps but was only required to exercise ordinary care and prudence to keep them in a reasonably safe condition. Lawson v. D. H. Holmes Co., La.App., 1941, 200 So. 163; and DeLatour v. Roosevelt Hotel, Inc., La. App., 1941, 1 So.2d 353. The slippery condition of the top step as compared to the adjacent sidewalk and the lack of a handrail were asserted as negligence by appellees.

The evidence, disputed throughout of course, was that the concrete sidewalk had a rough finish while the surface of the steps including the first step had a steel trowel finish. An expert for appellees gave it as his opinion that stepping from the sidewalk on to the first step while both were wet could be compared to stepping on a spot of ice while walking on the sidewalk because of the difference in the surface of the two. The expert for appellant testified, based on a National Bureau of Standards test conducted by him, that the step was not slippery but on the other hand met recognized safety standards. This witness did not test the sidewalk to show the difference between the surface of the step and sidewalk, other than a place only four inches from the step which he said was worn down through use. The expert for appellee made a coefficient of friction test, using the moccasins worn by Mr. Cutrer in the test as well as a new shoe, and concluded that the coefficient of friction on the sidewalk was fifty percent while that of the top step was twenty five percent when both were dry but when wet the coefficient of friction on the sidewalk went up to seventy five percent, while that of the top step dropped down to twenty percent, thus indicating that the top step

was almost four times as slippery as the adjacent sidewalk leading up to the step when wet. Appellant's expert attacked the test used by this expert but himself made no comparison. The weight of the testimony of the experts was for the jury, as was the other evidence of much previous use without slip downs, three prior slip downs on other of the steps, whether the "moccasins" were unsafe, and whether the steps were maintained in accordance with usual safety practices. There was sufficient evidence from which the jury could infer negligence on the part of the assured Inn.

As to contributory negligence, Mr. Cutrer testified that he did not know what caused him to fall and it was clear that he had used the steps several times daily over a long period of time. Also the jury viewed the "moccasins" and heard testimony as to their being unsafe. Whether he was guilty of contributory negligence was a question for the jury.

These questions were properly submitted to the jury and the evidence was sufficient to warrant the verdict. Indeed, it would have been sufficient to warrant a verdict for appellant. That being so, our function and authority insofar as these questions are concerned ended with the return of the jury verdict. American Automobile Insurance Company v. Wainwright, 5 Cir., 1960, 284 F.2d 942; and Greyhound Corporation v. Dewey, 5 Cir., 1957, 240 F.2d 899. It would perhaps not be amiss to reiterate what we said on this subject in this latter case, and which is different from the review on law and facts afforded in the Louisiana State Courts:

"An appellate court's scope of review in negligence cases involving factual issues has been clearly and comprehensively defined by the courts. We must not search the record for conflicting evidence which would warrant taking the case from the jury on the theory that the testimony gives equal support to divergent inferences. The jury's function is to select from among conflicting inferences and conclusions those which are considered the most reliable and reasonable. We are not free to reweigh the evidence merely because the jury could have drawn different inferences or conclusions. * * * 'Where * * * the case turns on controverted facts and credibility of witnesses, the case is peculiarly one for the jury.' * * *

"In reaching its conclusion as to negligence and proximate cause a jury is frequently called upon to consider many separate strands of evidence and from these to draw its ultimate conclusions. Jury findings on conflicting evidence are binding on this Court, which accepts as true that version of the testimony the jury might reasonably have adopted in reaching its verdict. Appellant can succeed only if it establishes that there is no substantial evidence to support the verdict, considering the evidence in the light most favorable to the appellee and clothing it with all reasonable inferences to be deduced therefrom."

In addition to insufficiency of evidence, appellant assigns as error the receipt in evidence of certain exhibits being the National Building Codes of 1949 and 1955 and Ordinances of the City of Bogalusa adopting the National Building Code, all pertaining to the requirement of handrails on steps of the type in question here. The trial court ruled that these codes and ordinances were not retroactive but admitted them for the limited purpose of showing the contemporaneous practice with regard to handrails on steps. This evidence, going to the question of whether the steps were reasonably safe, was of the same type as the photographs of other stairs, some showing handrails and others not, which were introduced without objection by appellant and appellees. The court was careful to limit the ordinances and codes to being merely evidential as distinguished from setting a legal standard. II Wigmore, Evidence, § 461 (3d Ed.1940). This accords with Texas & Pacific R. Co. v. Behymer, 1903, 189 U.S. 468, 23 Sup.Ct. 622, 47 L.Ed. 905. Under the charge of the court the ordinances

82

and codes were only evidence of what usually is done. "It thus was evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

The following charge of the court, requested by appellees, is also asserted as error:

"You are charged that so far as the plea of contributory negligence is concerned, it is the law that mere knowledge of the existence of a defect in the leased premises will not be sufficient to charge a person who is injured because of it with contributory negligence."

This is a correct statement of law and was adjusted to the evidence in this case. Gray v. Succession of Spiro, La.App. 1943, 14 So.2d 92.

There being substantial evidence to support the verdict, and the other errors assigned being without validity, the judgment is

Affirmed.