141 So.2d 673 (1962)
Mrs. Betty Booty DAVIS, Plaintiff-Appellee,
v.
NEW YORK UNDERWRITERS INSURANCE COMPANY et al., Defendants-Appellants.
No. 5573.
Court of Appeal of Louisiana, First Circuit.
May 21, 1962.
*674 Simon & Wicker, by Thomas C. Wicker, Jr., New Orleans, for appellant.
Seal, Mitchell & Lee, by J. Mart Mitchell, Benj. W. Miller, Bogalusa, for appellees.
Before ELLIS, HERGET, and MILLER, JJ.
MILLER, Judge pro tem.
This suit and the companion case of Davis v. Powell and Edgar Jenkins, La. App., 141 So.2d 679, which was consolidated for trial with the present case, arise out of a rear end collision which occurred in the City of Bogalusa on July 28, 1960. On that day, Mrs. Betty Booty Davis, who was on her way to work, was riding in the front seat of a 1955 Pontiac automobile then owned and operated by her husband, Marcus J. Davis, Jr., and insured by defendant, New York Underwriters Insurance Company. Immediately preceding the collision, the Davis car was traveling south on Columbia Street at 10 to 15 miles per hour and was then being followed by a 1959 Ford milk truck belonging to defendant, Albert R. Powell, then being driven by defendant, Edgar Jenkins, and insured, for public liability, by defendant, Marquette Casualty Company.
When Mr. Davis reached a position immediately short of a walk that runs alongside the north parallel of Fourth Street and on out across Columbia Street, he slowed his car preparatory to stopping or parking it, in order that Mrs. Davis could get out and go to her place of employment. While he was yet engaged in the stopping or parking maneuver, his car was suddenly struck from the rear by the following truck. The collision threw Mrs. Davis out of the car.
When the driver of the following truck saw the Davis car slow down, he immediately applied the brakes but they failed completely, and he was unable to stop the truck. After the collision he veered into the north-bound traffic lane, applied the emergency brake and stopped the truck. The truck driver admitted that he did not think about applying the emergency brake until after the collision. According to his testimony, he would have stopped the truck *675 in ample time to avoid the collision had the brakes not failed.
The learned trial judge, in a well reasoned, written opinion, found that the sole cause of the accident was the failure of the brakes on the truck. On this finding he granted judgment in favor of Mrs. Davis and against the defendants, Albert R. Powell, Edgar Jenkins and Marquette Casualty Company in the sum of $7,500.00, and dismissed Mrs. Davis' suit against New York Underwriters Insurance Company. From such judgment, Albert R. Powell, Edgar Jenkins and Marquette Casualty Company perfected a suspensive appeal. Mrs. Davis also appealed as to the portion of the judgment dismissing her suit against New York Underwriters Insurance Company, and answered the appeal of the other appellants asking that the award be increased to $15,000.00.
Appellants, Albert R. Powell, Edgar Jenkins and Marquette Casualty Company, predicate their appeal on the following two specifications of error:
First: That they are not responsible for the latent defect of faulty brakes where the proof was such as to exclude every other reasonable hypothesis of negligence.
Second: That Marcus Davis was contributorily negligent in stopping his car suddenly, without warning at a place where a stop is not reasonably to be anticipated.
While we agree that the driver and owner of a car are not responsible for latent defects if the latent defects are the sole cause of the accident, we are also of the opinion that the owner and driver have a corresponding obligation to ascertain the existence and guard against latent defects. Moreover, the driver and owner have the positive duty and obligation to have their automobile equipped with an effective dual braking system. LSA-R.S. 32:284. Fulco v. Lumbermen's Mutual Casualty Co., La.App., 110 So.2d 871; Hassell v. Colletti, La.App., 12 So.2d 31; Rochefort v. Teche Lines, La.App., 186 So. 751. As shown in these cases, the failure of the owner or operator of a motor vehicle to maintain and in an appropriate emergency to make use of the emergency brake is actionable negligence.
The evidence in the case at bar shows that defendant's truck was driven at least 180 miles per day 7 days each week; that in every daily trip the driver had to stop at 100 or more different milk pick-up points; that no visual inspection of the brake cylinders, shoes or drums had been made within 8 months preceding the accident; and that the brake failure was caused by the corroded condition of the rubber piston or rubber cup situated inside the wheel brake cylinder. The evidence is also clear that a visual inspection of the rubber piston would have immediately shown the defective condition of this rubber cup. Considering the extremely heavy demand placed on the braking mechanism of this truck, we find that the total absence of regular visual inspection of the brake system constitutes negligence on the part of the owner and driver of the truck. A similar question was presented in the case of Hassell v. Colletti, La.App., 12 So.2d 31. In that case the truck involved was making regular round trips from Jeanerette to New Orleans, a distance of 260 miles, and those trips were made on the average of three times per week. The brakes were checked every other week, and the accident resulted from brake failure. The Orleans Court of Appeal held that these inspections were wholly inadequate. We consequently find no merit to Appellants' first specification of error.
In support of their second specification of error, Appellants rely on the holding of Smith v. Smith, La.App., 36 So.2d 388 and Nomey v. Great American Indemnity Company, La.App., 121 So. 2d 763. We find these cases to be inapposite to the present case since Davis did not make a quick stop prior to the collision. Furthermore, Jenkins, the driver of *676 the truck, admittedly could have avoided the collision had the brakes not failed and consequently Davis' action in slowing down the lead car was not a proximate cause of the accident, since he had every right to expect that the following truck was properly equipped with brakes. We agree with the trial court that the sole cause of the accident was the failure of the brakes on the truck.
Having disposed of the question of the responsibility for the accident, there is left for consideration the fixing of the amount of damages to which Mrs. Davis is entitled. In the accident, Mrs. Davis was thrown from the car to the paved street. She got up unassisted, but was extremely excited and in severe pain. She was taken immediately to the Bogalusa Community Medical Center where she was seen by Dr. W. S. Harrell, whose first diagnosis as stated in his report was "Acute left sacro iliac strainshockand contusion of left kidney." Dr. Harrell admitted plaintiff to the hospital for emergency first aid, treatment for shock, and ordered daily physiotherapy treatments. Dr. Harrell testified by deposition that Mrs. Davis suffered a severe sprain of both the lower back and the right hip which caused "especially severe" pain the first three or four days then it gradually let up until she was able to walk around. In addition he noted that Mrs. Davis was obviously agitated nervously at the time of his first examination. X-ray examination revealed no fractures. Dr. Harrell testified that while the patient was in the hospital "The patient was given diathermy treatments for her hip and back, she was given narcotics when needed for pain, sedatives to quiet her nerves, and also a drug to alleviate a condition of vomiting that developed while she was there." The narcotic given was 100 miligram doses of Demarol, the sedative, butesol sodium, and for nausea, the patient was given Tigan. Mrs. Davis remained in the hospital for eleven days. At the time Mrs. Davis was discharged from the hospital, Dr. Harrell advised her "to take it easy as I remember, not to do any heavy lifting or straining, that it might cause her back to hurt her worse, and it might start up her menstrual flow." Thereafter, she took treatments at Dr. Harrell's office on August 9th, 11th, 13th, 14th, 17th, 19th, 21st, 23rd, 25th, 29th, and September 8th, 1960. In his discharge of September 14, 1960, he noted that the "patient says that her back still bothers her some, she wears a girdle and she is now discharged." Dr. Harrell was of the opinion that there was no permanent disability, but "told her not to do strenuous work at that time."
Mrs. Davis testified that on the day of the accident, she planned to see Doctor Waldrup to determine whether or not she was pregnant. While plaintiff was in the hospital, Dr. Harrell had a frog test made which confirmed that Mrs. Davis was 30 days pregnant on the day that the accident occurred. In Dr. Harrell's opinion, it was possible that the pregnancy could have accounted for some of the nausea, but it was his opinion that Mrs. Davis' nervous condition which resulted from the accident definitely aggravated her nausea. It is possible that the Demarol and medications caused or aggravated the nausea.
It was stipulated by all parties that the reports from Drs. V. Glenn Waldrup and Allen R. Singleton, whose practice is limited to Obstetrics and Gynecology, would be introduced in lieu of taking their testimony. Dr. Waldrup reported that Mrs. Davis first consulted him on August 24, 1960, at which time she was found to be approximately nine weeks pregnant. He reported that "She was extremely apprehensive of any injury to the pregnancy that might have resulted from the accident. Even though I could state that from the standpoint of the pregnancy itself findings were normal, I could not assure her that no damage was done. This would have to wait until pregnancy was terminated.
"During her pregnancy she has had more than the usual amount of complaints referrable *677 to her back for which she has been treated with muscle relaxants and physiotherapy. She has been extremely apprehensive about the outcome of this pregnancy for which tranqualizers have been used intermittenly."
Dr. Waldrup gave as the expected date of delivery March 16, 1961, and the child was born on March 17, 1961. The delivery was uneventful and uncomplicated.
Mrs. Davis worked as a clerk for a Bresser Finance Company in Bogalusa prior to the accident. About September 20, 1960 or seven weeks after the accident, she returned to full time work in this position. She worked eight hours a day four days and four hours a day two days each week, until approximately two weeks before the delivery of the child. She worked part time during the last two weeks before the delivery up until three days prior to the delivery. Mrs. Davis related that she went to work even though her back hurt because she and her husband were in financial need. The trial judge believed this testimony and we do not find this conclusion manifestly erroneous.
Counsel for appellant contends that plaintiff should have brought lay testimony from plaintiff's husband, employer and mother concerning her pain and suffering subsequent to the accident; that since such evidence was not presented, we should disbelieve plaintiff's testimony and that of her physicians that she suffered during the period that she was working for the Finance Company and that she was suffering as of the date of the trial, June 14, 1961. We note that the trial judge was impressed with the testimony of Dr. Harrell, the reports of Drs. Waldrup and Singleton and the testimony of Mrs. Davis. It was his opinion that Mrs. Davis was still suffering as of the date of the trial, and that she would suffer some residual disability. We must note however, that there is no medical testimony to the effect that plaintiff does have some residual disability. We find no manifest error in the trial judge's evaluation of plaintiff's complaints, but do not find any medical evidence to support his finding that Mrs. Davis will have some residual disability.
The trial court awarded plaintiff $5,000 for pain, suffering and residual disability. Since there was no medical evidence of residual disability, we must hold this conclusion manifestly erroneous and disallow that portion of the award, and reduce the award for pain and suffering to $3,500.
We find that Mrs. Davis' injuries were not as serious as those suffered by the plaintiffs in the cases of Marcantel v. Southern Farm Bureau Casualty Ins. Co., La.App., 102 So.2d 879 and LeBourgeois v. Indiana Lumbermen's Mutual Insurance Co., La. App., 101 So.2d 720, which were cited by plaintiff's counsel. However, the injuries were more serious than those suffered by the plaintiffs in the cases of Marchiafava v. Pearce, La.App., 125 So.2d 34; Deshotels v. United States Fire Ins. Co., La.App., 132 So.2d 504; Williamson v. Roberts, La. App., 103 So.2d 499; Dyer v. Stephens Buick Co., La.App., 125 So.2d 185; Langlois v. Continental Ins. Co., La.App., 107 So.2d 492, and Degeyter v. Trahan, La. App., 113 So.2d 808, which cases were relied on by appellant.
For the mental anguish and anxiety suffered by Mrs. Davis concerning the possible effect of the accident to her expected child, the trial court awarded $2,500. The trial court emphasized the eight month delay during which Mrs. Davis had to wait for the delivery. The medical evidence substantiated her testimony that she continuously worried about and was administered tranquilizers to help with this problem, and that while the Doctors could assure her that her progress was normal, they "could not assure her that no damage was done." While there should be less cause for worry to an expectant mother who has an accident while she is only 30 days pregnant than to an expectant mother who is six to eight months pregnant when she sustains an accident, *678 we are not here entirely concerned with the reasonableness of the cause for alarm or worry. Here the plaintiff was continuously worried about the accident having caused harm to her expectant baby. Because of this alarm, plaintiff was placed on tranquilizers. The physicians would not give her any assurance that the accident could not cause the expectant child any harm.
Appellant has cited the cases of Muller v. Herrin Motor Lines, La.App., 184 So. 406, where the plaintiff received $750 for certain minor injuries which were made more serious due to the fact that she was one month pregnant at the time of the accident; Jordan v. Fidelity & Casualty Co. of N. Y., La.App., 90 So.2d 529, where the plaintiff received $500 for worry over the effects of injuries received when she was seven months pregnant; Wiley v. Sutphin, La. App., 108 So.2d 256, where the plaintiff received $250 for worry about the future birth of her child when the injuries were received when she was between six and seven months pregnant; Rogillio v. Cazedessus, La.App., 122 So.2d 897, where plaintiff received $500 for anxiety regarding her unborn child and the injuries were received when she was three and one-half months pregnant; Sibley v. Wilcox, La.App., 125 So.2d 49, where the plaintiff received a total of $2,000 for pain and suffering and mental anguish resulting from injuries received when she was three months pregnant and the injuries caused an abortion; and Deshotels v. United States Fire Insurance Co., La.App., 132 So.2d 504, where the plaintiff received $1,000 for mental anguish and anxiety due to concern for herself and the unborn child, she having been six and a half months pregnant when the injuries were received.
In the Muller case, the plaintiff was not hospitalized and her injuries were minor. In the Jordan case, the plaintiff was discharged after her first examination by the physician, and was awarded but $150 for her physical injuries. In the Wiley case, the plaintiff was only slightly injured and there was no indication that plaintiff incurred any medical expenses. In the Rogillio case, plaintiff's injuries were minor and there was no reference in the opinion to any medical testimony to confirm plaintiff's claim of anxiety or worry. In the Sibley case, plaintiff received relatively minor injuries. The total medical bills came to $153. The only reference to back pain was limited to a period a few hours after the accident. In the Deshotel case, plaintiff received more serious injuries than in the other cases heretofore mentioned; however, Mrs. Davis' injuries were more severe than those received by the expectant mothers in all of these cases.
The trial court relied on the case of Nomey v. Great American Indemnity Company, La.App., 121 So.2d 763, where the plaintiff received $1,000 for mental suffering and anxiety for minor injuries which were received eight days before her normal baby was delivered. Unquestionably, Mrs. Davis' injuries were more serious than those suffered by plaintiff in the Nomey case, and it is also clear that Mrs. Davis worried over a much longer period of time and received more medical treatment.
In our view, the facts of this case and the jurisprudence require that the $2,500 award for mental anguish be reduced to the sum of $1,500.00.
For these reasons, the judgment appealed from is amended by reducing the amount of the award for physical pain and suffering from $5,000 to $3,500, and the amount awarded for mental anguish from $2,500 to $1,500, making the total amount of the judgment the sum of $5,000 and as thus amended the said judgment is affirmed. All costs of this appeal are assessed against the plaintiff.
Amended and affirmed.