**TRAVELERS INSURANCE COMPANY, Appellant,**

v.

**GULF NATIONAL BANK, Tutor of the Minor, Chester James Raggio, Jr., Appellee.**

**No. 19096.**

United States Court of Appeals Fifth Circuit.

Aug. 7, 1962.

Rehearing Denied Sept. 13, 1962.

---

Meredith T. Holt, Cavanaugh, Hickman, Brame & Holt, Lake Charles, La., for Travelers Insurance Company, defendant-appellant.

James Domengeaux, Bob F. Wright, Domengeaux & Wright, Lafayette, La., for plaintiff-appellee.

Before HUTCHESON, CAMERON and GEWIN, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from a judgment rendered against appellant Insurance Company in favor of appellee Bank, tutor of Chester James Raggio, Jr., in the sum of $178,125.00 for personal injuries to Chester James Raggio, Jr. and the death of all of the members of his family, consisting of father, mother and sister. The verdict of the jury was for $237,500.00, but the trial court ordered a remittitur of one fourth before entering judgment. Thibodeaux had been the original tutor of the ten-year-old Chester Raggio, but the Bank was appointed tutor when Thibodeaux moved out of the State of Louisiana.

Travelers urges that we reverse the judgment, relying upon the same grounds advanced by it in its motions for mistrial, for directed verdict, for judgment n. o. v., etc. in the trial before the district court. That court wrote an able and accurate opinion covering each of the points urged before us, Thibodeaux v. Brown Oil Tools, Inc. et al., 192 F.Supp. 495–500. We refer to that opinion as accurately setting forth the facts of the case, the points raised by defendant-appellant, and as correctly deciding each of the points raised. Upon the basis of that opinion, the judgment of the district court is affirmed. We will confine this opinion to a brief discussion of two of the chief arguments made below and repeated before us. The first of these is the contention that the car which caused the accident which resulted in the damages claimed was not being driven at the time by a person for whose actions the Insurance Company would be liable under the policy sued on.

As the opinion of the district court well states, the policy names Brown Oil Tools, Inc. and another as the insured and covers the Plymouth automobile whose operation proximately caused the injuries sued on. It was owned by Brown Tools, Inc. and assigned to its employee L. D. Irvin who had had sole custody and control of it twenty-four hours each day for about one year prior to the accident. At that time, the car was being driven by Mrs. Hazel Buxton at the request of Irvin who was too intoxicated to drive it. Irvin did not recall anything which happened on the trip in which he and Mrs. Buxton were engaged, but she testified and gave an articulate account of what happened throughout the trip and at the time of the accident.

She was the mother of eight children, and was seven months advanced in pregnancy at the time the accident happened. She was a waitress in a small restaurant and bar in Hackberry, Louisiana, and she had met Irvin the night before the tragedy when they both had drinks. The following day when she was off duty and after he had slept off a part of the effects of the previous night's drunk, he approached her and asked her to drive him to Sulphur, Louisiana, about eleven miles away. At his request, she drove the car to Sulphur without incident. He continued drinking and she took drinks sparingly on the trip. One of her small boys was with them. Irvin was not in condition to get a haircut when he arrived there, a chief object of the trip, and was staggering so that she persuaded him to spend a couple of hours sleeping in the car. It turned out that he was not even then sufficiently sober to drive the car

back to Hackberry and, upon his insistence, she agreed to drive back. He placed the key in the lock and turned on the motor and sat on the front seat with her. To and from Sulphur, he had been "pawing" at her, pinching her and otherwise pestering her.

When they had reached a point near Hackberry on the return journey, Mrs. Buxton observed in the lane ahead of the Plymouth, the pickup truck in which the Raggio family was riding. She was driving at a speed of about fifty miles an hour and the Raggios were moving at a speed of from thirty-five to forty miles an hour. Both she and Irvin had had one or more drinks in Sulphur or upon the return trip.

According to her testimony, as she approached the Raggio truck from the rear she endeavored to slow down the Plymouth car, but the brakes were not functioning properly and she decided that she would have to turn into the left lane and pass the truck. When she made a move in that direction, she saw some large trucks approaching in the left lane. She pulled the Plymouth back into the right lane and was very close to the Raggio truck. During all of this maneuver Irvin was wrestling with her for the steering wheel and she had difficulty in controlling the car. As she began to maneuver the Plymouth onto the shoulder so as to pass on the righthand side of the Raggio truck, Irvin seized hold of the steering wheel and held it so that it ran into the rear of the Raggio truck. At the same time, he kicked her foot off of the brakes and was himself in entire control of the Plymouth when it ran into

the Raggio car. The lick knocked the Raggio car into the left lane immediately in front of the oncoming trucks. One of the trucks struck it and dragged it a considerable distance, the impact killing Mr. Raggio, the driver of the pickup truck, his wife and their small daughter, sister of Chester.

■ The case was submitted to the jury on six written interrogatories, the second of which asked whether L. D. Irvin was guilty of negligence in the operation of the car which caused the accident and the ensuing injuries and deaths. The jury gave an affirmative answer to that question. It is not denied that Irvin was insured under the policy and that Travelers was liable for his actions at the time, so that this finding by the jury that he was guilty of negligence was a sufficient basis for the judgment entered by the court below.

But Travelers contends that, even if the jury's finding that Irvin was himself negligent was adequate to fix liability upon the insurer, the verdict should not be permitted to stand because the trial court committed an error of law in charging the jury that Irvin had authority to permit Mrs. Buxton to drive the car, and that the jury was inevitably swayed against the Insurance Company by this prejudicial error so that the verdict should not be permitted to stand, even though there was another valid basis upon which it could be rested. Appellant points out that, during the reception of evidence when the appellant had just begun to put on its witnesses, the lower court committed clear error in charging the jury as set forth in the margin.[1]

---

1. "* * * I am telling the jury now that the fact that he, Irvin, might have violated his instructions and let Mrs. Buxton drive this automobile matters not, so if he let Mrs. Buxton drive that automobile, then there is coverage by Travelers in this case. Now, that does not mean that Travelers is liable here; that is, in order for anyone to be liable, there must be negligence * * * We will get into that later, but the lawyers have spent the greater portion of this time, * * * on this question of coverage and since there is going to be no dispute about those facts, I think it would save time to tell you that right now and that is necessary to keep us from having these constant objections that this is or is not relevant * * *.

   "The Court understands that counsel for defendants objects to the Court's so charging you. It is a close point under the Louisiana law. I may be making an error when I tell you that this is the law,

This phase of appellant's argument is dealt with in the published opinion of the court below,[2] and we think that, in its opinion, the court correctly demonstrates that the charge it gave the jury was correct as applied to the facts of the case before it. There is no doubt that the Supreme Court of Louisiana in Rogillio et al. v. Cazedessus et al., 1961, 241 La. 186, 127 So.2d 734, did reverse the decision of the Louisiana Court of Appeals in Rogillio et al. v. Cazedessus et al., 122 So.2d 897, 902, and did limit the application of Brooks v. Delta Fire & Casualty Co., La.App., 82 So.2d 55, which cases the district court was following when it gave the challenged instruction. This decision of the Louisiana Supreme Court had undoubtedly limited the liability of an insurer when an injury is caused by a person whom an omnibus or additional insured, not named as such in the policy, has permitted to use a covered car. But that limitation is not applicable under the facts as found by the jury in this case, as the court below cogently explains on pages 498–499 of its opinion, supra. It is clear from the Supreme Court's opinion in Rogillio that the action of a permittee is covered by a policy such as is here involved when the original permittee was present and "still had direction and control of the car."

The jury certainly had the right to conclude that Irvin, undoubtedly insured under the policy,[3] was present, directing and controlling the car driven by his permittee, Mrs. Buxton. It can hardly be argued in fact that her testimony to this effect, set forth above, was the subject of serious dispute.

We think, moreover, that under the facts of this case, the foregoing instruction to the jury, even if error, is not such as to vitiate a verdict based upon the independent finding of the jury that Irvin was himself guilty of active negligence which caused the accident. Cf. Great American Insurance Co. v. Cutrer, 5 Cir., 1962, 298 F.2d 79.

Finally, we reject appellant's argument that the amount of the verdict was "gross, monstrous and inordinate." The verdict is a large one, but the court below was vested with discretion to determine whether, under the decisions of this Court,[4] a new trial should be granted. The court did make a substantial reduction in the amount of the verdict, demonstrating that it studied the question carefully and exercised its discretion after considering the full facts and determining what, in its judgment, was just and right. We will not hold that its discretion was abused.

Affirmed.

---

but I either have to tell you that that is the law or it is not the law because I have to decide what the law is in this case and you have to follow the law as I tell you it is and I am now telling you that that's the law and you must follow the law in that particular * * *."

2. 192 F.Supp. 498–499.

3. Parks v. Hall, 1938, 189 La. 849, 181 So. 191; Dominguez v. American Casualty, 1950, 217 La. 487, 46 So.2d 744; Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, La.App., 1950, 47 So.2d 133; Gonzales v. Beaumont Cement Sales Co., La.App., 1961, 125 So. 2d 785.

4. Complete Auto Transit, Inc. v. Floyd, 1957, 249 F.2d 396, and cases there cited.